UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,          :
                                                      :
          – v –                                  :          Docket No. 11-CR-878 (LAK)
                                                      :
                                                      :
TIMUR GERASSIMENKO, DMITRI    :
JEGOROV, and KONSTANTIN POLTEV,  :
                                                      :
                    Defendants.       :
_____

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' PRETRIAL MOTIONS

GLENN A. GARBER (GAG 9300)
233 Broadway, Suite 2370
New York, NY 10279
Tel: (212) 965-9370
Fax: (212) 965-9375
Email: ggarber@glenngarber.com
*Attorney for TIMUR GERRASSIMENKO*

ANTHONY STRAZZA
2027 Williamsbridge Road, 2nd Floor
Bronx, NY 10461
Tel: (914) 844-1551
Fax: (718) 823-6622
Email: astrazza@msn.com
*Attorney for DMITRI JEGOROV*

CALVIN H. SCHOLAR
225 Broadway, Suite 715
New York, NY 10007
Tel: (212) 323-6922
Fax: (212) 323-6923
Email: chscholar@aol.com
*Attorney for KONSTANTIN POLTEV*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………………. i

PRELIMINARY STATEMENT………………………………………………………........... 1

ARGUMENT………………………………………………………………………………. 1

Point I
THE INDICTMENT SHOULD BE DISMISSED BECAUSE DEFENDANTS WERE NOT
PROVIDED WITH FAIR NOTICE THAT THEIR CONDUCT WAS CRIMINAL AND
THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A
PROSECUTION……………………………………………………………….…........... 1

Point II
THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE DEFENDANTS HAVE
ALREADY BEEN PROSECUTED IN THE REPUBLIC OF ESTONIA FOR THE SAME
UNDERLYING CONDUCT……………………………………………………………….... 9

Point III
ELECTRONIC EVIDENCE SHOULD BE SUPPRESSED………………………………… 13

March 1, 2010 Search Warrant……………………………………………………………….. 13

December 6, 2010 Mutual Legal Assistance Letter……………………….................................. 14

Seizure Of Electronically Stored Data………………………………….................................. 14

Point IV
DEFENDANTS GERASSIMENKO, JEGOROV, AND POLTEVS' CASES SHOULD BE
SEVERED FROM THAT OF DEFENDANT TSASTSIN………………………………... 17

Defendants Move for an Order Pursuant to Fed. R. Crim. P. 14 to Sever Their Trials From
That of Their Co-Defendant VLADIMIR TSASTSIN  Based On Spillover Prejudice and
Improper Joinder Of Counts And Defendants………………………………………………... 18

Point V
THIS COURT SHOULD ISSUE AN ORDER DIRECTING THE GOVERNMENT TO
DISCLOSE ALL EXCULPATORY MATERIAL IN ITS POSSESSION TO THE
EXTENT NOT ALREADY PROVIDED…………………………………………………. 21

Point VI
THIS COURT SHOULD ISSUE AN ORDER DIRECTING THE GOVERNMENT TO
DISCLOSE "BAD ACT" OR "OTHER CRIMES" EVIDENCE IN ADVANCE OF
TRIAL……………….............................................................................................................. 23

Point VII
THIS COURT SHOULD ISSUE AN ORDER GRANTING LEAVE TO DEFENDANTS
TO FILE ADDITIONAL AND SUPPLEMENTAL MOTIONS AS APPROPRIATE AND
TO JOIN THE CO-DEFENDANTS' MOTIONS…………………………………………….   24


CONCLUSION……………………………………………………………………………….   25

# TABLE OF AUTHORITIES

## CASES

*Abbate v. United States*, 359 U.S. 187 (1959)………………………………………... 9

*Ashley v. Texas*, 319 F.2d 80 (5th Cir.)……………………………………………… 21

*Bartkus v. Illinois*, 359 U.S. 121 (1959)……………………………………………… 9

*Blockberger v. United States*, 284 U.S. 299 (1932)…………………………………… 10

*Bouie v. City of Columbia*, 378 U.S. 347 (1964)……………………………………… 1

*Brady v. Maryland* 373 U.S. 83 (1963)………………………………………………… 21

*Feist v. RCN*, 11-Cv-5436 (LGS) (SDNY 2011)……………………………………… 4

*Giglio v. United States*, 405 U.S. 150 (1972)………………………………………… 21, 22

*Giles v. Maryland*, 386 U.S. 66 (1967)………………………………………………… 22

*Groh v. Ramirez*, 540 U.S. 551 (2004)………………………………………………… 15

*Ingram v. United States*, 272 F.2d 567 (4th Cit. 1959)……………………………… 20

*Jackson v. Wainwright*, 390 F.2d 288 (5th Cir.)……………………………............. 21

*Kyllo v. United States*, 533 U.S. 27 (2001)…………………………………………… 15

*Lanzetta v. State of N.J.*, 306 U.S. 451 (1939)……………………………………… 2

*McBoyle v. United States,* 283 U.S. 25 (1931)……………………………………… 1

*Napue v. Illinois*, 360 U.S. 264 (1959)………………………………………………… 21

*Perkins v. LeFevre*, 691 F.2d 616 (2d Cir. 1982)…………………………………… 21

*Rewis v.United States,* 401 U.S. 808(1971)………………………………………… 2

*Richardson v. United States*, 580 F.2d 946 (9th Cir. 1978)………………………… 9

*Russell v. United States*, 369 U.S. 749 (1962)……………………………………… 7

*Schaffer v. United States*, 362 U.S. 51 (1960)……………………………………… 18

*Sindona v. Grant*, 619 F.2d 167 (2d Cir. 1980)……………………………………… 9,10, 11,12

*States v. Cervone*, 907 F.2d 332 (2d Cir. 1990)……………………………………… 19

*States v. Jurado-Rodriguez*, 907 F. Supp. 568 (E.D.N.Y. 1995)…………………… 9, 11

*Strickler v. Greene,* 527 U.S. 263 (1999)…………………………………………… 2

*Thomas v. United States*, 343 F.2d 49 (9th Cir. 1965)……………………………… 22

*United States v. Agurs*, 427 U.S. 97 (1976)………………………………………… 21

*United States v. Alfonso,* 143 F.3d 772 (2d Cir.1998)……………………………… 8

*United States v. Al-Marri*, 230 F.Supp.2d 535(S.D.N.Y. 2002) …………………… 16

*United States v. Bagley*, 473 U.S. 667 (1985)……………………………………… 21

*United States v. Bailleaux*, 685 F.2d 1105 (9th Cir. 1982)………………………… 23

*United States v. Bass,* 404 U.S. 336 (1971)………………………………………… 1

*United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978)…………………………… 23

*United States v. Gallo*, 668 F.Supp. 736 (E.D.N.Y. 1987)………………………… 19

*United States v. Gamaldi*, 384 F.Supp. 529 (S.D.N.Y. 1974)……………………… 20

*United States v. Granello*, 365 F.2d 990 (2d Cir. 1966)…………………………… 20

*United States v. Hall*, 20 F.3d 1084 (10th Cir. 1994)……………………………… 7

*United States v. Henthorn*, 93 F.2d 29 (9th Cir. 1991)……………………………… 22

*United States v. Kelly*, 349 F.2d 720 (2d Cir. 1965)………………………………… 18, 19

*United States v. Lanier*, 520 U.S. 259 (1997)……………………………………… 1

*United States v. Laurent*, 861 F.Supp.2d 71 (2011)………………………………… 9

*United States v. Lech*, 161 F.R.D. 255 (S.D.N.Y. 1995)…………………………… 20

*United States v. Liu*, 239 F.3d 138 (2d Cir. 2000)………………………………… 16, 17

*United States v. Longo*, 70 F.Supp.2d 225 (W.D.N.Y. 1999)……………………............   15
*United States v. Mehrmanesh*, 689 F.2d 822 (9th Cir. 1982)………………………………   23
*United States v. Miller*, 116 F.3d 641 (2d Cir. 1997)………………………………………   19
*United States v. Myers*, 550 F.2d 1036 (5th Cir. 1977)……………………………………   23
*United States v. Nixon*, 634 F.2d 306 (5th Cir. 1981)………………………………………   22
*United States v. O'Razvi*, 97 Cr. 1250 (JLC), 1998 WL 405048 (S.D.N.Y. July 17, 1998)……………………………………………………………………………………   15
*United States v. Papadakis*, 510 F.2d 287 (2d Cir. 1975)…………………………………   20
*United States v. Perez*, 575, F.2d 164 (2d Cir. 2009)………………………………………   8
*United States v. Pollack*, 534 F.2d 964 (D.C. Cir.)…………………………………………   22
*United States v. Reyes*, 922 F.Supp. 818 (S.D.N.Y. 1996)…………………………………   16
*United States v. Rosa*, 11 F.3d 315 (2d Cir. 1993)…………………………………………   18
*United States v. Strifler*, 851 F.2d 1197 (9th Cir. 1988)……………………………………   21
*United States v. Triumph Capital Group, Inc.*, 211 F.R.D. 31 (D.Conn. 2002)……………   16
*United States v. Turoff*, 853 F.2d 1037 (2d Cir. 1988)………………………………………   20
*United States v. Velastegui*, 199 F.3d 590 (2d Cir. 1999) …………………………………   2
*United States v. Vilar*, S3 05 Cr 621 (KMK), 2007 WL 1075041 *36 (S.D.N.Y April 4, 2007)………………………………………………………………………………   15, 16
*United States v. Wilkins*, 326 F.2d 135 (2d Cir. 1964)………………………………………   21
*Zafiro v. United States*, 506 U.S. 534 (1993)………………………………………………   18, 19
*Zango, Inc., Formerly Known as 180 Solutions, Inc., Keith Smith, and Daniel Todd*, Dkt. C-4186, 2010 WL 267787 (March 7, 2007)…………………………………………   4, 5, 6

**STATUTES AND CONSTITUTIONAL PROVISIONS**

18 U.S.C. § (a)(4)………………………………………………………………………………   3
18 U.S.C. § 1030………………………………………………………………………………   3, 7
Fed. R. Evid. 401………………………………………………………………………………   23
Fed. R. Evid. 403………………………………………………………………………………   23
Fed. R. Evid 404(b)……………………………………………………………………………   23
Fed. R. Crim. Pro. 12 (b)(3) …………………………………………………………………   8, 13
U.S. Const. Amend. V…………………………………………………………………………   9

**OTHER AUTHORITIES**

Amy Tracy, *Technology Law—Great Google-y Moogley: The Effect and Enforcement of Click Fraud and Online Advertising*, 32 U. ARK. LITTLE ROCK L. REV. 347 (Mar. 1, 2007)…….   4
Bassiouni, International Extradition and World Public Order 452-59 (1974)………………..   10
Computer Crime and Intellectual Prop. Section, Crim. Div., U.S. Dep't of Justice, *Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations* (2002), available at www.usdoj.gov/criminal/cybercrime…………………………   14
DNS Hijacking http://en.wikipedia.org/wiki/DNS_hijacking…………………………………   4
Marie Gryphon, *IT'S A CRIME?: Flaws in Federal Statutes That Punish Standard Business Practice*, Civil Justice Report, Manhattan Institute,  No. 12, December 2009, at Part 3, at http://www.manhattan-institute.org/html/cjr_12.htm.  Indeed…………………….   2
Orin S. Kerr, *Cybercrime's Scope: Interpreting "Access" and Authorization" In Computer Misuse Statutes*, 78 N.Y.U. L. REV. 1596 (2003)……………………………………   3

Susan W. Brenner, *State Cybercrime Legislation in the United States of America: A Survey*, 7 RICH. J.L. & TECH. 28, n. 37 (2001)…………………………………   3
U.S. Attorneys Criminal Resource Manual, Title 9 § 2…………...……………………..   11

## PRELIMINARY STATEMENT

Defendants TIMUR GERASSIMENKO, DMITRI JEGOROV, and KONSTANTIN POLTEV, by and through their attorneys submit this memorandum of law in support of joint pretrial motions seeking dismissal of the indictment, suppression of evidence, severance, production of *Brady* and *Giglio* material, disclosure of Rule 404 evidence; and leave to file additional and supplemental motions and to join in motions filed by co-defendants.  These motions should be granted for the reasons set forth below; alternatively oral argument and/or evidentiary hearings should be held on the claims.

The facts upon which the motions are based are set forth in the Affirmation of Counsel accompanying this memorandum.

## ARGUMENT

### Point I

**THE INDICTMENT SHOULD BE DISMISSED BECAUSE DEFENDANTS WERE NOT PROVIDED WITH FAIR NOTICE THAT THEIR CONDUCT WAS CRIMINAL AND THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A PROSECUTION**

Justice Oliver Wendell Holmes cautioned that when a legislature enacts a crime, "it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." *McBoyle v. United States,* 283 U.S. 25, 27 (1931); *Bouie v. City of Columbia,* 378 U.S. 347, 350–51 (1964)(due process demands that a statute "give fair warning of the conduct that makes it a crime.").  The doctrinal rule of lenity was created to err on the side of defendant's rights, as it is intolerable in a civilized society to countenance the notion that a person's liberty can be taken by the government without notification of what conduct is deemed to be unacceptable.  See *United States v. Bass,* 404 U.S. 336, 348 (1971).  It "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *United States v. Lanier,* 520 U.S.

1

259, 266 (1997).  The main concern is "whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* at 267.  If it is found that "the ambit of the criminal statute is ambiguous, the ambiguity should be resolved in favor of lenity." *United States v. Velastegui*, 199 F.3d 590, 593 (2d Cir. 1999); *see also Rewis v.United States,* 401 U.S. 808, 812 (1971).  Indeed, "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. State of N.J.*, 306 U.S. 451 (1939).

Unfortunately, these precepts, which undergird the basic right to fair notice of criminal charges in accordance with due process of law, have been virtually ignored as Congress has embarked on an unchecked rampage to criminalize business practices it does not even understand.

> [T]he Court has increasingly tolerated a proliferation of federal statutes that impose criminal penalties for vague and ambiguous offenses. These statutes are sometimes drafted broadly because the efforts of federal lawmakers and law enforcement agencies to regulate complex commercial conduct have been frustrated by rapid technological progress. Unfortunately, the result has been the erosion of traditional due process principles and the criminal conviction of people who reasonably believed that their conduct was legal.

Marie Gryphon, *IT'S A CRIME?: Flaws in Federal Statutes That Punish Standard Business Practice*, Civil Justice Report, Manhattan Institute,  No. 12, December 2009, at Part 3, available at http://www.manhattan-institute.org/html/cjr_12.htm.  Indeed, "[i]n many instances, the laws in question are so voluminous and loosely drafted that even a student of the legislation would not have fair notice of what conduct was prohibited and what was not."  Id. at Executive Summary.

This problem is pronounced in the "cyber-crime" context.  Computer technology and the Internet are expanding so quickly that it is difficult for legislatures to comprehend, let alone keep pace with, technology and how it can fairly be commercially exploited.  Moreover, the line where unfair or unethical business practices crosses to criminality is particularly difficult to define.  Orin S. Kerr, *Cybercrime's Scope: Interpreting "Access" and Authorization" In Computer Misuse Statutes,* 78 N.Y.U. L. REV. 1596 (2003).   Nevertheless, in an effort to cast a wide net to address potential cyber-crimes, statutes tend to criminalize "unauthorized access" of computers and property damage.  Susan W. Brenner, *State Cybercrime Legislation in the United States of America: A Survey*, 7 RICH. J.L. & TECH. 28, n. 37 (2001); Kerr, supra at 1661.

In this case, 18 U.S.C. § 1030 is the operable statute.  At issue are subdivisions (a)(4), and (a)(5)(A) and (B).  18 U.S.C. § (a)(4) states in relevant part that "defendants "knowingly and with intent to defraud… *access[ed] a protected computer without authorization..."* Subdivisions (a)(5)(A) and (B) of 18 U.S.C. § 1030 are similar, but focus on "*damage*" to computers "*without authorization*."  The difference between 18 U.S.C. §§ 1030 (a)(5)(A) and (a)(5)(B) is that (a)(5)(A) targets "the transmission of a program, information, code or command [that] intentionally causes *damage without authorization* to a protected computer" and (a)(5)(B) focuses on "*access[ing] a protected computer without authorization*, and as a result… recklessly causes *damage*."

Even if the moving defendants were intimately familiar with the programing and mechanics of the DNS Changer module it is far from clear that the bundling of DNS Changer with media player software violated any crime.  Adware causes advertisement pop-ups that adware distributors and their advertising affiliates have a financial interest in.  But it is not illegal.  Adware, which this software module resembles, is frequently combined with free

3

functional software such as a media player, as the Estonian court recognized. In addition, at the time of the alleged "criminal" conduct cutting edge U.S. companies engaged in (and continue to engage in) businesses that involve DNS manipulation, the same technology that the U.S. government takes umbrage with in this case.  See also, *Feist v. RCN,* 11-Cv-5436 (LGS) (SDNY 2011) (a civil suit brought in this district against Paxfire, a U.S. company that specializes in DNS-driven Internet traffic manipulation through proxy servers for commercial gain; Paxfire is counter-suing for defamation and tortious interference based upon criticism of its business model).  Indeed, large U.S. companies engage in DNS manipulation and click maximization, the things that the defendants in this case are accused of doing, yet it is civil, not criminal, forums that are used to settle disputes surrounding these business practices.

http://en.wikipedia.org/wiki/DNS_hijacking ("A number of consumer ISPs such as Cablevision's Optimum Online, Comcast, Time Warner, Cox Communications, RCN, Rogers, Charter Communications, Verizon, Virgin Media, Frontier Communications, Bell Sympatico, UPC, T-Online, Optus, Mediacom, ONO, TalkTalk, Bigpond (Telstra), and TTNET use DNS hijacking for their own purposes, such as displaying advertisements or collecting statistics");  Amy Tracy, *Technology Law—Great Google-y Moogley: The Effect and Enforcement of Click Fraud and Online Advertising*, 32 U. ARK. LITTLE ROCK L. REV. 347 (Mar. 1, 2007).

Perhaps most importantly, there are no regulations that proscribe such behavior. Therefore, at best, DNS Changer was a questionable business practice that could possibly be subject to civil liability.  The Estonian trial court addressed this issue and citing *Zango, Inc., Formerly Known as 180 Solutions, Inc., Keith Smith, and Daniel Todd*—Consent Order And Complaint, Federal Trade Commission, Dkt. C-4186, 2010 WL 267787, CCH-TRR P 15945,

(March 7, 2007), a case very similar to this one, determined that civil recourse was the farthest

possible reach, not criminal sanction.  (ETCD at § 4.3.4, Ex. 1 to Aff. of Counsel).

In *Zango,* adware was bundled and distributed with free downloadable software which

caused unwanted pop-up advertisements and it was alleged that Respondents' conduct

constituted an unfair business practice.  A consent order was issued that included fines and

injunctive relief.  However, the facts, which were not viewed as *criminal,* were much more

concerning than in the instant case.  According to the FTC complaint:

> In some instances, no reference to the adware was made on
> websites offering the lureware or in the install windows. In others,
> information regarding the adware was available only by clicking
> on inconspicuous hyperlinks contained in the install windows or in
> lengthy terms and conditions regarding the lureware. Often the
> existence and information about the effects of Respondents'
> adware could only be ascertained, if at all, by clicking through
> multiple inconspicuous hyperlinks. Other affiliates and sub-
> affiliates used security exploits and drive-by downloads to bypass
> consumer notice and consent completely. The complaint alleges
> that Respondents knew or should have known of their affiliates'
> and sub-affiliates' widespread failure to provide adequate notice of
> their adware and obtain consumer consent to its installation.
>
> The Commission's complaint further alleges that Respondents,
> until at least mid-2005, made identifying, locating, and removing
> their adware extremely difficult for consumers. Among other
> things, Respondents: installed code on consumers' computers that
> would enable their adware to be reinstalled silently after
> consumers attempted to uninstall or remove it; failed to identify
> adequately the name or source of the adware in pop-up ads so as to
> enable consumers to locate the adware on their computers; named
> adware files or processes with names resembling core systems
> software or applications and placing files in a variety of locations;
> listed the adware in the Windows Add/Remove utility under names
> intended and/or likely to confuse consumers; required consumers
> to have a live Internet connection and download additional
> software from Respondents to uninstall the adware; represented to
> consumers that the adware did not show pop-up ads and/or
> exaggerated the consequences of uninstalling the adware; provided
> uninstall tools that failed to uninstall the adware in whole or part;

> and/or reinstalled the adware files on consumers' computers with randomly generated names to avoid further detection and removal.

*Zango,* supra. Here, however, the licensing agreement warned users at the onset, in all caps, to "CAREFULLY READ THE FOLLOWING TERMS AND CONDITIONS BEFORE USING THIS PRODUCT."  It also stated, among other things, that:

> The Licensor reserves the right to install additional components using its check/update system. These components may include some commercial solutions, commercial web browser, commercial messaging software and *these can change your network settings.*

(Licensing Agreement at 1, Ex. 3 to Aff. of Counsel) (emphasis added).

Furthermore, there was accessible customer service with a website ("domainserror.com", Ex. 4 to Aff. of Counsel) that instructed users how to uninstall the software and change affected network settings.  Thus, it is hard, if not impossible, for anyone including defendants to understand how their conduct, which is not even clearly civilly wrong, was criminal in nature.

In addition, unlike this case, *Zango* involved a tangible form of damage.  There:

> The complaint further alleges that these practices have caused or are likely to cause substantial consumer injury by requiring consumers to spend substantial time and/or money to locate and remove this adware from their computers. The injury to consumers was neither reasonably avoided by the consumers themselves, nor outweighed by countervailing benefits to consumers or competition.

*Zango,* supra.  But here, the software was easily removable *and* consumers who downloaded it obtained the benefit of free fully functional media player software. Any annoyance to users that may have been caused by the DNS Changer module is arguably outweighed by the desired and useful software accepted by computer users.  Indeed, any claim that computer users suffered actual harm because their computers had to be replaced is preposterous.

Therefore, it is simply unfair to conclude that 18 U.S.C. § 1030 gave defendants fair notice that their conduct was criminal.  As such, concerns for fundamental fairness and due process of law should militate in favor of invalidating the instant prosecution.

Should the Court find that defendants have not carried their burden in challenging the statute as applied – indeed the bar is high to dismiss an indictment pre-trial for statutory vagueness, see *Russell v. United States*, 369 U.S. 749, 765–66 (1962) –the Court is not without recourse to ameliorate the due process violation that ensued short of trial.

Here, in addition to lack of fair notice, the U.S. indictment fails to include critical facts that cut to heart of defendants' innocence and which demonstrate that the underlying conduct does not violate any provision of 18 U.S.C. § 1030.  It is not uncommon for free software to contain bundled add-ins that direct users to advertisements or for software to alter network settings with user consent.  And, if consent is requested and obtained, obviously the software distributor is not "accessing" a computer "without authorization," nor is it "damaging" a computer "without authorization."   See 18 U.S.C. §§ 1030(a)(4), (a)(5)(A) and (B).  But in this case, consent was requested and obtained in each download installation the government complains of.  Nevertheless, while the government cannot dispute the fact of the licensing agreement, the indictment simply fails to make reference to it and, quite remarkably, avers falsely that "[w]ithout the computer users' knowledge or permission, [defendants'] malware digitally hijacked the infected computers to facilitate the defendants' commission of Internet advertising fraud…" (Indictment at ¶ 1).

There is no doubt that courts have the authority to look beyond the indictment under circumstances like those presented here and order dismissal at the pretrial phase.  *United States v. Hall*, 20 F.3d 1084 (10th Cir. 1994) (dismissing 924(c) charge where undisputed facts vitiated

prosecution of offense as a matter of law).  Rule 12(b) of the Federal Rules of Criminal Procedure states that "[a]ny defense, objection, or request which is capable of determination without trial of the general issue may be raised before trial by motion."  Certainly a court is permitted to consider factual issues and hold an evidentiary hearing when disposing of a motion to dismiss.  Rule 12(e) provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record."

While the type of inquiry requested here is rare, the Second Circuit notes that it is clearly appropriate where "the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial."  *United States v. Perez*, 575, F.3d 164, 167 (2d Cir. 2009), citing *United States v. Alfonso,* 143 F.3d 772, 776–77 (2d Cir.1998).  In this case, the investigation by the United States was essentially completed prior to the Estonian trial, and a trial of the same issues as here already took place.  Thus, there is a full record of undisputed facts, at least as to the germane issues that underlie this motion – most pertinently the licensing agreement.  Consequently, this Court is in the unique position to field this motion and dismiss the indictment.

It appears as if the government drafted an envelope-pushing indictment in 2011, overlooked the consent provided in the licensing agreement, and never considered the facts and issues raised in the 2013 Estonian litigation.  On top of this it failed to reevaluate this prosecution in light of the continuous practice by companies in the U.S. and elsewhere of engaging in the very same conduct the defendants are accused of and which is widely viewed—at worst—as questionable business practices, not criminal.

In sum, justice demands that the indictment be dismissed.  At a minimum, a legal question as to the scope of consent is ripe for review and should be considered by this Court at

this juncture.  Therefore, at the very least an evidentiary hearing should be held, an order should

issue directing the government to articulate what disputed evidence exists or legal questions

remain and to provide a proffer of its trial evidence so the Court can effectively entertain this

motion and decide whether it is appropriate to continue this prosecution to trial.  See *United

States v. Laurent*, 861 F.Supp.2d 71 (2011) (directing government to provide offer of proof to

advance motion to dismiss).

**Point II**

**THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE
DEFENDANTS HAVE ALREADY BEEN PROSECUTED IN THE
REPUBLIC OF ESTONIA FOR THE SAME UNDERLYING CONDUCT**

The Fifth Amendment to the United States Constitution provides that no "person be

subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V.

The Courts of the United States, however, have held that the Fifth Amendment Double Jeopardy

Clause does not preclude the United States from bringing criminal charges even after prosecution

by a different sovereign. See *Richardson v. United States*, 580 F.2d 946, 947 (9th Cir. 1978);

*Bartkus v. Illinois*, 359 U.S. 121 (1959); *Abbate v. United States*, 359 U.S. 187 (1959). The "dual

sovereignty" doctrine enunciated in these decisions recognizes different sovereigns may

vindicate their own interests and apply their own laws.

Despite the existence of the dual sovereign doctrine, the principle of *non bis in idem* has

been recognized as a legal basis to bar the prosecution of an extradited defendant by the

receiving country where the same offense or same conduct was prosecuted in the country from

where the defendant was extradited. See *Sindona v. Grant*, 619 F.2d 167 (2d Cir. 1980); *United

States v. Jurado-Rodriguez*, 907 F. Supp. 568 (E.D.N.Y. 1995). The courts that have addressed

the international principle of *non bis in idem* recognize that unlike "double jeopardy," for which

the dual sovereign doctrine permits subsequent prosecution for the same conduct by distinct

9

sovereigns, this principle protects an individual from multiple prosecutions irrespective of the prosecuting authority.

The controlling case on extradition and *non bis in idem* in the Second Circuit is *Sindona v. Grant,* 619 F.2d 167 (2d Cir. 1980). In that case, Michele Sindona, an Italian citizen, had been ordered extradited to Italy to face charges stemming from a fraud perpetrated on Italian banks which generated funds that Sindona used to allegedly commit different crimes in the United States. He was subsequently indicted for his criminal activity in the United States while awaiting extradition to Italy. Sindona filed a habeas corpus petition for relief, asserting that the *non bis in idem* clause contained in the Treaty on Extradition between the United States and Italy precluded dual prosecution of the Italian and American charges.

After noting that "[t]he widespread use of such clauses has produced relatively little in the way of reported decisions or helpful commentary with respect to their application," the Second Circuit held that *non bis in idem* clauses should be interpreted broadly. *Sindona* at 177. Citing to a scholarly treatise, the Court stated that these clauses are "applied 'more frequently' when the requested state has already commenced prosecution for 'the same, meaning identical, conduct.'" Id. (quoting Bassiouni, International Extradition and World Public Order 452-59 (1974)).

In *Sindona*, the Government argued that Court should apply a "same elements" test under *Blockberger v. United States*, 284 U.S. 299 (1932). The Court rejected this argument stating that adjudicating *non bis in idem claims* under a strict *Blockburger* "same elements" test would render this principle impotent in light of the different statutes used in foreign countries. The Court instead found that what should be used is a more "modified and more flexible test of

whether the same conduct or transaction underlies the criminal charges in both transactions."
*Sindona* at 178.

The Second Circuit also suggested that the U.S. Attorney's "Petite Policy" "is an appropriate benchmark for determining whether an extradition case should be dismissed based on *non bis in diem*." According to the U.S. Attorneys Criminal Resource Manual, Title 9, § 2:

> [t]his policy precludes the initiation or continuation of a federal
> prosecution, following a prior state or federal prosecution based on
> substantially the same act(s) or transaction(s)… This policy
> constitutes an exercise of the Department's prosecutorial
> discretion, and applies even where a prior state prosecution would
> not legally bar a subsequent federal prosecution under the Double
> Jeopardy Clause because of the doctrine of dual sovereignty.

While this language is not controlling, it is instructive and further serves to underscore the principle in this country that a defendant should not be prosecuted twice for the same criminal activity.

In *United States v. Jurado-Rodriguez*, 907 F.Supp 568 (E.D.N.Y. 1995), a group of defendants extradited from Luxembourg to the United States were charged in an American indictment with conspiring to distribute cocaine, possession with intent to distribute cocaine, and money laundering. Citing heavily to *Sindona*, the Court held that the defendants could not be prosecuted for money laundering in the United States after already having been prosecuted for money laundering in Luxembourg. Although noting the difference between *non bis in idem* clauses that specify "same acts" as opposed to "same offenses," the *Jurado-Rodriguez* Court nonetheless recognized that:

> [T]he terms "same offense" and "same conduct" are subject to
> broad interpretive leeway. "Same conduct" may range from
> "identical acts" to "multiple acts committed in more than one place
> and at different times but related by the actor's initial design;"
> "same offenses" may range from "identical charges" to
> "related…but not included [offenses]."

Id. at 577 (internal citations omitted).

The *Sindona* Court ultimately found that the *non bis in idem* clause was not a basis for relief in Mr. Sindona's case, however, this result was reached on a strictly factual basis.  The Court reasoned that the crimes charged in the American indictment were merely "on the periphery of the circle of the crimes charged by the Italian prosecutors..." and not stemming from the same conduct or transactions. Id. at 179. Moreover, the Italian prosecutor in *Sindona* agreed not to include the crimes that contained certain areas of "overlap" in his subsequent prosecution of Mr. Sindona.

The language that the *non bis in idem* clause referenced to in Sindona is similar to the language of the *non bis in idem* clause contained in the Extradition Treaty between the United States and the Republic of Estonia.  Article 5, paragraph 1 of this treaty states that: "[e]xtradition shall not be granted when the person sought has been convicted or acquitted in the Requested State for the offense for which extradition is requested."  (See Exhibit 5 to Aff. of Counsel).

Under a *Sindona* analysis, the defendants in the instant case have already been acquitted in the Republic of Estonia for the "offense" for which they were extradited to the United States. The Estonian-United States charges arise out of the same conduct, during the same time period, and involve the same participants.  The current prosecution of the defendants is therefore duplicative, and affords the Unites States government a "second bite at the apple." Moreover, the fact that the elements of the specific crimes charged in each jurisdiction may not be perfectly identical is by no means dispositive of this issue.

For the foregoing reasons, the indictment should be dismissed under the principle of *non bis in idem.*

## Point III

## ELECTRONIC EVIDENCE SHOULD BE SUPPRESSED

The defendants request that the Court issue an Order pursuant to Rule 12(b)(3) of the

Federal Rules of Criminal Procedure, suppressing evidence on the grounds that the evidence

from electronic devices, specifically e-mails and other electronically stored information, was

obtained in violation of the Fourth Amendment of the United States Constitution or, in the

alternative, the defendants request that the Court grant a hearing to determine the admissibility of

such evidence.

### March 1, 2010 Search Warrant

On March 1, 2010, the government sought and obtained a search warrant for a server that

allegedly contained evidence of a criminal computer conspiracy.  The March 1, 2010 search

warrant and underlying affidavit described the place to be searched as "the premises known and

described as an image of computer server assoc. with IP address 69.31.87.98."  (See Exhibits 6

and 7 to Aff. of Counsel).  The search warrant explicitly stated that the thing or place to be

searched was the server.

The affidavit in support of the search warrant described the manner in which the search

of the server was to be conducted.  In the search warrant application, the government swore that

its search would be "analogous to looking at the outside of a file cabinet for the markings it

contains and opening a drawer believed to contain pertinent files…'opening' or reading the first

few 'pages' of such files."  (See Aff. of Counsel Ex. 7 at p. 20).  However, the government

subsequently wrote in the affidavit that it intended to examine all of the data contained in the

storage devices and then make a determination if such material was criminal in nature.  In other

words, the government requested an impermissible general search of the electronic items.

13

**December 6, 2010 Mutual Legal Assistance Letter**

In a letter dated December 6, 2010, the government requested the assistance of Estonia pursuant to the treaty on Mutual Legal Assistance in Criminal Matters.  (See Exhibit 8 to Aff. of Counsel [hereinafter referred to as December 6, 2010 letter]).  In the December 6, 2010 letter the government revealed that it had examined every byte of data in the server searched pursuant to the March 1, 2010 warrant.  Although the government had informed the Court that it would only open the "first few" pages of files, the government in fact conducted an impermissible general search of all of the electronically stored data.  In the December 6, 2010 letter, the government lists the contents of numerous e-mail messages that were impermissibly obtained. (See Ex. 8 to Aff. of Counsel).

**Seizure of Electronically Stored Data**

The defendants' motion seeks suppression of all evidence derived from the seizure of electronic data from electronic devices obtained as a result of the March 1, 2010 search warrant, underlying applications, and affidavits, on the grounds that the warrant was overbroad and permitted the government to conduct an impermissible general search.  Any evidence obtained from this violation of the Fourth Amendment should also be suppressed as "fruit from the poisonous tree."  The defendants have standing to move to suppress the electronic data and any evidence derived therefrom upon the grounds that the impermissible general search constituted a seizure of their personal electronically stored data.

The March 1, 2010, search warrant application requested an impermissible general search for criminal activity.  The search warrant did not tailor or specify with reasonable particularity what items of data could be searched and seized.  As a result, the government engaged in a general search which failed to comply with the Fourth Amendment.  See, Computer Crime and Intellectual Prop. Section, Crim. Div., U.S. Dep't of Justice, *Searching and Seizing Computers*

14

*and Obtaining Electronic Evidence in Criminal Investigations* (2002), available at

www.usdoj.gov/criminal/cybercrime.

General searches similar to the search conducted in the instant case are disfavored.  The

Supreme Court held in *Groh v. Ramirez*, 540 U.S. 551, 557 (2004), that the "Fourth Amendment

states unambiguously that 'no Warrants shall issue, but upon probable cause, supported by Oath

or affirmation, and *particularly describing* the place to be searched, and *the persons or things to

be seized*'"(emphasis in original).  The Court in *United States v. Vilar*, S3 05 Cr 621 (KMK),

2007 WL 1075041 *36 (S.D.N.Y April 4, 2007), stated that the Second Circuit had not

comprehensively addressed the issues raised by computer searches and few District Courts have

had the chance to examine those issues.  The Supreme Court held in *Kyllo v. United States*, 533

U.S. 27, 40 (2001) that when the government "uses a device that is not in general public use, to

explore details…that would previously been unknowable without physical intrusion, the

surveillance is a 'search' and is presumptively unreasonable without a warrant."  At least one

Court has stated that the copying of the contents of a computer or electronic device is a 'seizure.'

*United States v. Longo*, 70 F.Supp.2d 225, 247 (W.D.N.Y. 1999) (describing that after a search

of the defendant's computer, the government seized the contents).  In *United States v. O'Razvi*,

97 Cr. 1250 (JLC), 1998 WL 405048 *6 (S.D.N.Y. July 17, 1998), the Court held that a warrant

was necessary to search the contents of computer disks seized during a search of a briefcase

incident to arrest.  The defense would submit that the contents of the electronic devices in the

instant case are analogous to the aforementioned disks that were located in a closed container.

Thus, the government was required to obtain a warrant in order to examine any of the contents of

the electronic files once it had "looked at the outside of the file cabinet."  Each file was a discreet

locked container with stored private data.

Courts have routinely held that computers and electronic devices should be treated as if they were closed containers. *United States v. Al-Marri*, 230 F.Supp.2d 535, 541 (S.D.N.Y. 2002); *United States v. Reyes*, 922 F.Supp. 818, 832-833 (S.D.N.Y. 1996). The Fourth Amendment prohibits law enforcement from opening and examining the contents of closed containers. The uniform application of Fourth Amendment principles has been made more difficult by increasing technological advances. However, the requirement that law enforcement searches and seizures are not allowed to exceed the scope of a search warrant can be applied in the instant Fourth Amendment determination regardless of the fact that the search was performed on a computer. The evidence obtained from the searches of the 69.31.87.98 server should be suppressed as the searches performed were tantamount to an impermissible general search. *United States v. Vilar*, S3 05 Cr. 621 (KMK), 2007 WL 1075041 *20 (S.D.N.Y. April 4, 2007). The government merely provided a generic "catch all" provision indicating that it would search for anything criminal. However, that "catch all provision" made the search warrant overbroad. *United States v. Triumph Capital Group, Inc.*, 211 F.R.D. 31 (D.Conn. 2002). The remedy for a search that violates the Fourth Amendment is suppression. *United States v. Liu*, at 141; *United States v. Vilar*, S3 05 Cr 621 (KMK), 2007 WL 1075041 (S.D.N.Y April 4, 2007).

"Wholesale suppression" is required when three factors are met. *United States v. Liu*, at 140. First, law enforcement had to effect the widespread seizure of items not within the scope of the warrant. Id. The second prong requires that the search actually resembles a general search. Id. The last prong requires a showing that law enforcement did not act in good faith. Id.

In the instant case, as specified in its letter to Estonia, the government effected a widespread seizure of all electronic data stored in the 69.31.87.98 server. The government seized and examined all of the data despite telling the Court that it would specifically limit its

16

search.  The government cannot meet its burden to establish good faith in the instant case, especially considering that law enforcement failed to adhere to the scope of the search listed in its own application.

Further, the government conducted a widespread seizure of items that were not within the scope of the warrant.  As a result, there was no discernible difference between the search and seizure that occurred from March 1, 2010 and a general search.  Wholesale suppression is required in the instant case.  *United States v. Liu*, 239 F.3d 138, 141 (2d Cir. 2000).

In March, 2010, the government obtained a warrant that permitted a search that was more extensive than what appeared to have been requested in the affidavit.  Moreover, the search exceeded what was necessary or required under the circumstances.  Thus, law enforcement engaged in a general search of all files, records, and data contained within the 69.31.87.98 server.  Therefore, the evidence obtained pursuant to that general search should be suppressed as well as evidence subsequently derived from that impermissible search.

Consequently, the motion to suppress any and all evidence obtained as a result of the general search conducted pursuant to the March 1, 2010 search warrant should be granted or in the alternative, a hearing should be held to determine whether there has been a Fourth Amendment violation.

### Point IV

### DEFENDANTS GERASSIMENKO, JEGOROV, AND POLTEVS' CASES SHOULD BE SEVERED FROM THAT OF DEFENDANT TSASTSIN

The instant indictment charges defendants TIMUR GERASSIMENKO, DMITIR JEGOROV, and KONSTANTIN POLTEV with conspiring with VLADIMIR TSASTSIN to commit wire fraud and computer intrusion in five (5) counts of the indictment.  The indictment charges VLADIMIR TSASTSIN separately with twenty-two (22) counts of money laundering

17

and engaging in monetary transactions in property derived from unlawful activity, specifically

wire fraud and computer-related frauds.  Counsel has moved for a severance of the defendant

pursuant to Federal Rule of Criminal Procedure 14(a) and Federal Rule of Criminal Procedure 8

(a) and (b) because "there is a serious risk that a joint trial would compromise a specific trial

right of the moving defendant or prevent the jury from making a reliable judgment about guilt or

innocence."  *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993), *cert. denied*, 511 U.S. 1042.

Although there is a preference, in the federal system, that defendants who have been

indicted together be tried jointly, granting a severance remains an appropriate exercise of the

Court's discretion, particularly when, as in the instant case, a significant fundamental

constitutional right shall be abridged by a joint trial.  *Zafiro v. United States*, 506 U.S. 534, 537

(1993).  The Court of Appeals for the Second Circuit in *United States v. Kelly*, 349 F.2d 720, 759

(2d Cir. 1965), stated that "[i]t is well settled that the trial judge is under 'a continuing duty at all

stages of the trial to grant a severance if prejudice' to a particular defendant is made manifest."

*United States v. Kelly*, 349 F.2d 720 (2d Cir. 1965), quoting *Schaffer v. United States*, 362 U.S.

511, 516 (1960).

### Defendants Move for an Order Pursuant to Fed. R. Crim. P. 14 to Sever Their Trials From That of Their Co-Defendant VLADIMIR TSASTSIN  Based On Spillover Prejudice and Improper Joinder Of Counts And Defendants

Defendants TIMUR GERASSIMENKO, DMITIR JEGOROV, and KONSTANTIN

POLTEV move for an Order pursuant to Fed. R. Crim. P. 14 to sever their trials from that of co-

defendant TSASTSIN based on spillover prejudice.  The above named defendants are listed in

only five (5) of the twenty seven (27) counts of the indictment.  A trial in the instant matter

would primarily consist of evidence against TSASTSIN and not defendants GERASSIMENKO,

JEGOROV, and POLTEV.  An overwhelming amount of evidence will be submitted by the

government solely against TSASTSIN in which the other defendants were not jointly engaged.

18

Thus, the moving defendants would suffer unfair prejudice that cannot be mitigated.  Severance

is proper as a joint trial with TSASTSIN would prevent a reliable verdict.  *Zafiro v. United*

*States*, 506 U.S. 534, 537 (1993).  Further, the branding of TSASTSIN as a leader only subjects

the remaining defendants to additional spillover prejudice.  *United States v. Kelly*, 349 F.2d 720,

759 (2d Cir. 1965) (holding that there was prejudice to a minor co-defendant from inexorable

accumulation of evidence against leaders in the organization); *United States v. Gallo*, 668

F.Supp. 736, 750 (E.D.N.Y. 1987) (stating that where evidence against co-defendants is

disproportionate, prejudicial spillover is enhanced); *United States v. Cervone*, 907 F.2d 332, 342

(2d Cir. 1990) (holding that severance may be required where "spillover might influence jury to

attribute criminal intent to ambiguous conduct associating a particular defendant with

conspiracy").  The defendants submit that severance is proper so that they may effectively

exercise their Sixth Amendment rights.

     As noted above, defendants TIMUR GERASSIMENKO, DMITIR JEGOROV, and

KONSTANTIN POLTEV are charged in only five (5) of twenty seven (27) counts in the

indictment.  Thus, the remainder of the indictment involves acts of money laundering by

TSASTSIN unrelated to the other defendants.  The defendants submit therefore, that a joint trial

of the aforementioned counts is an impermissible prejudicial joinder of counts in the indictment.

The overwhelming amount of evidence would be presented against TSASTSIN.  The defendants

submit that a jury would be unable to discern whether the other defendants were tainted by

evidence of TSASTSIN'S crimes with which they had no connection.  As the Court held in

*United States v. Miller*, 116 F.3d 641, 679 (2d Cir. 1997), there would be a serious risk that a

jury would be prevented from making a "reliable judgment about guilt or innocence."  The

prejudice that would be suffered by the defendants if tried with TSASTSIN based upon the

improper joinder of counts requires a severance pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure.

Further, the defendants submit that when an indictment charges multiple defendants and multiple offenses, joinder is tested solely under Rule 8(b). *United States v. Papadakis*, 510 F.2d 287, 3000 (2d Cir. 1975). The Second Circuit has held that defendants cannot be tried jointly "on two or more 'similar' but unrelated acts or transactions. *United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir. 1988). The government is obligated to demonstrate a clear connection between all of the defendants and all of the charged crimes. *United States v. Lech*, 161 F.R.D. 255, 266 (S.D.N.Y. 1995) (holding that "Rule 8(b)…requires more than the mere existence of similarities between some of the actors or crimes"). As the Court stated in *United States v. Gamaldi*, "[w]here multiple defendants are charged with offenses in no way connected, and are tried together, they are prejudiced by that very fact, and the trial judge has no discretion to deny relief." *United States v. Gamaldi*, 384 F.Supp. 529, 530 (S.D.N.Y. 1974) quoting *Ingram v. United States*, 272 F.2d 567, 570 (4th Cir. 1959). The Court in *Gamaldi* then quoted *United States v. Granello*, 365 F. 2d 990, 993 (2d Cir. 1966), *cert. denied*, 386 U.S. 1019, "[u]nder Rule 8(b) it is not enough that the defendants participated in the same act or transaction or series of them; they must have engaged in the same act or series of acts 'constituting an offense or offenses." Id. In the instant case, the majority of the indictment concerns the money laundering of TSASTSIN. The other defendants are not named in those counts and there is no claim that they participated or acted with a common purpose with respect to TSASTSIN'S alleged money laundering. The jury would simply be overwhelmed with evidence of TSASTSIN'S alleged wrongdoing and would be unable to separate the other defendants from that taint. For the

aforementioned reasons, the defendants' motion for a separate trial pursuant to the Federal Rules

of Criminal Procedure should be granted.

## Point V

**THIS COURT SHOULD ISSUE AN ORDER DIRECTING THE
GOVERNMENT TO DISCLOSE ALLEXCULPATORY MATERIAL IN
ITS POSSESSION TO THE EXTENT NOT ALREADY PROVIDED**

In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution

of evidence favorable to an accused ... violates due process where the evidence is material either

to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S.

83, 87 (1963).  Material that is "favorable to an accused" includes not only evidence that

affirmatively tends to exculpate the defendants, but also information that impeaches the

credibility of the government's witnesses.  *United States v. Bagley*, 473 U.S. 667, 676-77 (1985);

*Giglio v. United States*, 405 U.S. 150, 154-55 (1972).

Even where a specific request has not been made, the government is duty bound to

disclose information where its exculpatory value is apparent, extending even to correcting false

testimony by government witnesses during trial.  *United States v. Agurs*, 427 U.S. 97, 107

(1976); see also, *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

Included within the definition of "exculpatory" under *Brady* and its progeny, and

therefore subject to mandatory disclosure, are (1) the prior criminal record of a witness, *Perkins

v. LeFevre*, 691 F.2d 616, 619-20 (2d Cir. 1982); see also *United States v. Strifler*, 851 F.2d 1197

(9th Cir. 1988), *cert. denied*, 489 U.S. 1170 (1989), (2) any witness statements favorable to the

defendants, *Jackson v. Wainwright*, 390 F.2d 288 (5th Cir. 1968), (3) and relatedly, the existence

of witnesses favorable to the defense, *United States v. Wilkins*, 326 F.2d 135 (2d Cir. 1964), (4)

psychiatric reports, *Ashley v. Texas*, 319 F.2d 80 (5th Cir.), *cert. denied*, 375 U.S. 931 (1963), (5)

specific evidence which detracts from the credibility or counters the probative value of testimony

or evidence used by the government, *Thomas v. United States*, 343 F.2d 49 (9th Cir. 1965), (6) promises of immunity to a government witness, *Giglio*, supra, and agreements with the government, *United States v. Nixon*, 634 F.2d 306, 311-14 (5th Cir. 1981); and, (7) prior contrary statements of a government witness, *Giles v. Maryland*, 386 U.S. 66 (1967).

Moreover, any other evidence affecting the credibility of a government witness constitutes exculpatory evidence, from witness bias, motive to lie or exaggerate testimony, prior bad acts or convictions, to impeachment information contained in a government witness's personnel records.  *United States v. Henthorn*, 93 F.2d 29 (9th Cir. 1991).

On the issue of timing, many decisions applying the *Brady* principle address the risk of hobbling the defenses' ability to impeach the government's witnesses, and therefore, evidence which impeaches the credibility of a government witness must be disclosed to the defense in sufficient time so that it can be properly utilized at pre-trial hearings or trial.  See e.g., *Giglio v. United States*, 405 U.S. 150 (1972); *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999).

Accordingly, upon determining that exculpatory material exists, the defendants request that its disclosure be made immediately if no meritorious ground to protect it is advanced by the government, alternatively that it be provided "at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case."  *United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir.), *cert. denied*, 429 U.S. 924 (1976).  At a minimum, this Court should direct the government to provide all *Brady* and *Giglio* material to the Court for in camera inspection so the Court can determine what should be disclosed to the defense and when.

**Point VI**

**THIS COURT SHOULD ISSUE AN ORDER DIRECTING THE GOVERNMENT TO DISCLOSE "BAD ACT" OR "OTHER CRIMES" EVIDENCE IN ADVANCE OF TRIAL**

In order to effectively prepare for trial, the defense is entitled to notice of evidence that the government intends to introduce pursuant to Rule 404 of the Federal Rules of Evidence. That Rule provides that evidence relating to a defendants' other crimes, wrongs, or acts is inadmissible to show he acted in conformity with that character on a particular occasion, since such evidence often has minimal probative value but has the tendency to be highly prejudicial or to confuse the issues.

Prior act evidence may be admitted only if offered for a specific, legitimate purpose as proof of something other than bad character or criminal propensity. See FRE 404(b). Even then, there is still danger that the jury will misuse the evidence, and thus, the use of such evidence is carefully circumscribed and limited, *United States v. Bailleaux*, 685 F.2d 1105, 1109-10 (9th Cir. 1982); *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920 (1979); see FRE 403. The government must also show that there is a substantial need for the evidence. *United States v. Myers*, 550 F.2d 1036 (5th Cir. 1977).

The admissibility of other bad act evidence depends, first and foremost, on its relevance to a material issue in the case. Relevance has been defined as tending to make the existence of some fact that is of consequence to the determination of the action, either more or less probable than without the evidence. FRE 401. The burden falls to the government to demonstrate the relevance of the proffered evidence to a genuine issue in the case. *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982). To meet this burden, the government must "articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the other acts[.]" Id. at 830.

23

Accordingly, in order to prepare for trial, and so as to avoid undue delay, the defense respectfully requests that the government be directed to provide notice of "bad act" or "other crimes" evidence, at the earliest possible time.

**Point VII**

**THIS COURT SHOULD ISSUE AN ORDER GRANTING LEAVE TO DEFENDANTS TO FILE ADDITIONAL AND SUPPLEMENTAL MOTIONS AS APPROPRIATE AND TO JOIN THE CO-DEFENDANTS' MOTIONS**

In addition to the pretrial motions filed today, further motions may be necessary to preserve the defendants' rights upon receipt of the government's response. Until discovery is completed and the investigation has progressed further, the defendants do not know whether they have additional legal challenges to the charges against them or to the admissibility of various aspects of the government's proof.

Granting defendants leave to file additional motions and to join in such motions as co-counsel shall submit may therefore obviate the need for filing motions that would later prove to have been unnecessary.

Accordingly, the defendants request leave to file additional motions should such motions become appropriate upon the disclosure of additional facts through the process of discovery, and to join in those motions submitted by co-defendants which inure to their benefit.

## <u>CONCLUSION</u>

For the forgoing reasons, it is respectfully submitted that the defendants' motions should be granted in their entirety.  Alternatively, evidentiary hearings and/or oral argument should be held on the motions.

Dated: New York, New York
       January 13, 2015

                                        _____/s/_____

                                        GLENN A. GARBER (GAG 9300)
                                        *Attorney for TIMUR GERRASSIMENKO*
                                        233 Broadway, Suite 2370
                                        New York, NY 10279
                                        Tel: (212) 965-9370
                                        Fax: (212) 965-9375
                                        Email: ggarber@glenngarber.com


                                        _____/s/_____

                                        ANTHONY STRAZZA
                                        *Attorney for DMITRI JEGOROV*
                                        2027 Williamsbridge Road, 2nd Floor
                                        Bronx, NY 10461
                                        Tel: (914) 844-1551
                                        Fax: (718) 823-6622
                                        Email: astrazza@msn.com


                                        _____/s/_____

                                        CALVIN H. SCHOLAR
                                        *Attorney for KONSTANTIN POLTEV*
                                        225 Broadway, Suite 715
                                        New York, NY 10007
                                        Tel: (212) 323-6922
                                        Fax: (212) 323-6923
                                        Email: chscholar@aol.com