# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---

VLADIMIR TSASTSIN,

Petitioner,

-*versus*-

UNITED STATES OF AMERICA,

Respondent.

---

**11-CR-878(LAK)**

---

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
PURSUANT TO 28 U.S.C. § 2255**

---

**Vladimir Tsastsin**
*Pro se* **Litigant**
**Reg. No. 91040-054**
**Moshannon Valley Correctional Center**
**555-I GEO Drive**
**Philipsburg, PA 16866**

**June 20, 2018**

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------
```
VLADIMIR TSASTSIN,

Petitioner,

-*versus*-

**No. 11-CR-878(LAK)**

UNITED STATES OF AMERICA,

Respondent.
```
-------------------------------------------------------
```

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
## PURSUANT TO 28 U.S.C. § 2255

COMES NOW **Vladimir Tsastsin**, an inmate at Moshannon Valley Correctional Center, BOP Number 91040-054, defendant in the above captioned case, hereinafter Petitioner, and acting *pro se* very respectfully moves this Honorable Court to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255, challenging his sentence in this Honorable Court. Petitioner will show to the Court that his Constitutional rights were violated(including his Sixth Amendment right to effective counsel).

# Table of Contents

1.PRO SE STATUS....................................................................................................4
2.REQUEST TO EXPEDITE MOTION.....................................................................4
3.FACTS....................................................................................................................4
4.BACKGROUND....................................................................................................6
5.TIMELINESS OF THE § 2255 MOTION................................................................8
6.WAIVER OF COLLATERAL ATTACK IN THE PLEA AGREEMENT........................8
7.SUMMARY OF THE ARGUMENTS........................................................................9
8.ARGUMENTS REGARDING INEFFECTIVE ASSISTANCE OF COUNSEL AND DUE
PROCESS VIOLATION............................................................................................9
    8.1.Arguments for ineffective assistance of plea attorneys: Jeremy Schneider, David Stern, Lucos
    Anderson.........................................................................................................12
        8.1.1.ARGUMENT 1. Sixth Amendment and Due process violation regarding credit for Estonian
        sentence......................................................................................................13
    8.2.Arguments for ineffective assistance of sentencing attorneys: Arkady Bukh and Charles Kaser14
        8.2.1. ARGUMENT 2. Ineffective assistance of counsel for failure to raise Government's breach
        of plea agreement regarding offense level..........................................................16
        8.2.2. ARGUMENT 3. Ineffective assistance of counsel for failure to explain the Court's error in
        calculation of stipulated offense level. Sentence on the wrong guidelines.....................18
        8.2.3.ARGUMENT 4. Ineffective assistance of counsel for failure to raise Government's breach
        of plea agreement regarding offense level for leadership role.................................19
        8.2.4.ARGUMENT 5. Ineffective assistance of counsel for failure to raise Government's breach
        of plea agreement regarding loss amount...........................................................21
        8.2.5.ARGUMENT 6. Breach of plea agreement by changing forfeiture.....................23
        8.2.6.ARGUMENT 7. Ineffective assistance of counsel for failing to request an application of
        U.S.S.G. § 5G1.3(b)....................................................................................24
        8.2.7.ARGUMENT 8. Ineffective assistance of counsel. Attorney failed to adequately investigate
        the case and request correction in the PSR.........................................................29
        8.2.8.ARGUMENT 9. Ineffective assistance of counsel for failing to file a timely Notice of
        Appeal.......................................................................................................32
9.LANGUAGE ISSUE..............................................................................................33
10.EVIDENTIARY HEARING....................................................................................33
11.CONCLUSION.....................................................................................................34

In support of his Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, Petitioner states as follows:

## 1. *PRO SE* STATUS

A court should review *pro se* pleading under a less stringent standard that those drafted by attorneys. Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d. 652 (1972). *See also* Ward v. Jenkins, *613 F.3d 692, 697 (7th Cir. 2010) ("...a court must construe a pro se petition... liberally.").* "The allegations of a pro se habeas petition... are entitled to a liberal construction," which may "require[] active interpretation in some cases to construe a pro se petition to encompass any allegation stating federal relief." Franklin v. Rose, 765 F.2d 82, 85 (6th Cir. 1985) (citations and internal quotation marks omitted).

## 2. REQUEST TO EXPEDITE MOTION

Petitioner requests the Court to expedite this motion pursuant to 28 U.S.C. §2255 because Petitioner's period of incarceration according to previous BOP computation has expired as of February 28, 2018 and the decision of this Honorable Court will affect Petitioner's immediate release. The circumstances of this case are very extraordinary and Petitioner's constitutional rights (5th and 6thAmendment) were violated. All of these extraordinary circumstances occurred without Petitioner's involvement and/or knowledge and/or understanding.

## 3. FACTS

1. Petitioner was arrested on November 8, 2011 in Estonia by Estonian and U.S. authorities.

2. He was charged with money laundering in Estonia and computer crimes and money laundering in the U.S.

3. A predicate offense was required for money laundering charges, so Estonian Court incorporated computer crimes from the U.S. indictment into Estonian money laundering charge. Estonian Appeals Court explained: "The US indictment was also referred in the descriptive part of predicate offenses in the text of the [Estonian] indictment" (Docket Document 78-1, page 1).

4. The Estonian District and Appeals Courts made clear that the charges in the Estonian

case arose out of the same conduct that was the basis for the United States charges, the DNS malware: "in the indictment the defendants are charged with developing, distribution and management of malware called DNS changer" (Docket Document 78-1, page 1). The Estonian courts also focused on what "the click-fraudulent activity consisted of" Id. at 2. "Click-fraudulent activity" was also relevant to the US Indictment. The Estonian Appeals Court concluded that the Estonian indictment "describes with sufficient details the offenses with the monetary funds acquired from which money laundering was committed and shows the necessary *elements of offense* to which given criminal event corresponds to." Id. at 2.

5. On December 22, 2013 Estonian District Court acquitted Petitioner on all counts, including computer crimes.

6. On June 22, 2014 Estonian Appeals Court reversed the judgment of the District Court and found him guilty on all counts including computer crimes from the U.S. indictment. In Appeals Court's opinion "the necessary elements of predicate offenses constituted in [computer fraud and computer intrusion] of PC [personal computer] have been identified." (Docket Document 78-1, page 8) Petitioner appeals to the Estonian Supreme Court.

7. On October 30, 2014 Petitioner was extradited to the U.S., before the Estonian Supreme Court made a decision.

8. Estonian Courts made their decisions regarding predicate offense "[f]rom the evidence attached to the US indictment" (Docket Document 78-1, page 5) and from "the evidence examination protocol from December 15, 2011 DVD disks sent by NASA." Estonian decisions were based on hundreds of paper evidence and DVDs full of evidence presented by the U.S. to the Estonian authorities.

9. On April 7, 2015 Petitioner filed a motion to dismiss indictment which was never ruled upon by the Court.

10. Meanwhile on June 21, 2015 Estonian Supreme Court found him guilty only of computer intrusion causing damage and money laundering. Estonian Supreme Court found however that some of the computer charges were not chargeable under Estonian Law.

11. On July 7, 2015 Petitioner pleaded guilty to conspiracy to commit wire fraud and conspiracy to commit computer intrusion furthering fraud. The plea agreement stipulated the terms, which led to the calculation of the offense level 28 under the then current Sentencing Guidelines ("U.S.S.G.")

12. In the beginning of August 2015 Petitioner met with Probation Officer for a PSR interview.

13. On August 19, 2015 Probation Officer made a PSR with adjusted offense level to 32 by adding 4 points for leadership. Petitioner reviewed it with his attorney and made remarks and ask the attorney to submit objections including those regarding the leadership points.

14. In the end of August Petitioner informed his attorney (Jeremy Schneider) that Petitioner was going to retain a new attorney (Arkady Bukh). New attorney filed a notice of attorney appearance on September 9, 2015, when he received the first payment from the Petitioner.

15. On September 30, 2015, Probation Officer made a revised PSR and mailed it to the former attorneys. It said that no objections were received from any of the Petitioner's attorneys or the prosecutor. However, Petitioner did not receive this PSR until after the sentencing.

16. On November 1, 2015, U.S.S.G. were amended and became more lenient to the Petitioner (victims enhancement and loss amount enhancement were lowered).

17. On April 26, 2016 Petitioner was sentenced on stipulated offense level 28 to 87 months of incarceration.

18. After the sentencing attorney failed to file a motion pursuant to Fed. R. Crim. P. 35 to correct a sentence according to U.S.S.G. §5G1.3(b).

19. In June 2016 Petitioner submitted a request to the BOP to receive foreign jail credit for "Relevant Conduct" on the undischarged sentence (U.S.S.G. §5G1.3(b)). And in August 2016 the credit was granted and Petitioner's release date was set to February 28, 2018.

20. On December 14, 2017 the BOP rolled back Petitioner's foreign jail credit. The prosecutor explained that in August 2016 the BOP granted credit based on wrong information or misunderstanding. And Petitioner's release date was set back to April 13, 2020.


## 4. BACKGROUND

Petitioner was prosecuted for money laundering in Estonia on June 22, 2014 and his conviction was affirmed by the Estonian Supreme Court on June 21, 2015. For Estonian money laundering conviction it was necessary to prove a predicate (underlying) offense. Estonian Supreme Court reviewed all charges from U.S. indictment, including computer fraud, computer intrusion furthering fraud and computer intrusion causing damage by transmitting data. It's important to note that Estonian Supreme Court found that the fraud charges could

not constitute the predicate offense under Estonian Law, but intrusion by transmitting data could.

On October 30, 2014 Petitioner was extradited to U.S for prosecution on the U.S. charges (wire fraud and computer intrusion), before he was able to finish his Estonian term of imprisonment (he still has undischarged term). Estonian case is relevant conduct to the US case, because it consists of acts "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." (U.S.S.G. §1B1.3.)

Before pleading guilty Petitioner learned from the prosecutor (through his attorney) and was lead to believe that he would receive credit in the US for the time served in Estonia on the undischarged relevant Estonian sentence (see Argument 1) and that if he signed the plea the prosecutor would defend her position that leadership points should not be applied (see Argument 4). Before Petitioner signed the plea his attorney also explained and confirmed that Petitioner would be credited for Estonian sentence (see Argument 1). On April 26, 2016 Petitioner was sentenced to 87 months, and he was lead to believe that credit for Estonian sentence would be granted by the BOP, because the prosecutor and attorney explained that either the Court or the BOP could do that and it is important only that "no double credit is inadvertently given" (Appendix A). Petitioner was transferred to the MVCC (Moshannon Valley Correctional Center, Philipsburg, PA) on May 20, 2016. He submitted the documents to the BOP (the papers were filled out by the MVCC employees) to obtain the credit for Estonian sentence and in June 2016 Petitioner got a response stating that the BOP couldn't award credit to him under 18 U.S.C. § 3585 because the time in question was already credited against other sentence (Appendix B). Petitioner resubmitted the papers to the BOP again (this time filling them out by himself) and in August 2016 the BOP gave him full credit (from the day of his arrest on November 8, 2011 till the day of his sentence April 25, 2016 – 53 months 18 days). Petitioner was sure that he got this credit for the Estonian sentence (credit pursuant to U.S.S.G. §5G1.3(b)), because at that moment both he and the BOP knew that this time was already credited against other sentence and he can't be credited pursuant to 18 U.S.C. § 3585. On December 14, 2017, only two months before Petitioner's projected release date the BOP rolled back the credit. Petitioner contacted his sentencing attorney (Arkady Bukh) and even then, in December 2017, attorney confirmed his belief that the credit should be granted

and there had been a mistake or misunderstanding. Attorney also advised to contact sentencing Court after administrative remedy in the facility would be exhausted. On March 30, 2018 (almost 2 years after sentencing) Petitioner learned from the prosecutor (Petitioner's Docket; Document 174) that "DSCC calculated the defendant's release date based on the mistaken understanding [...] That misunderstanding was due to erroneous information that the BOP has received via the Justice Department of Office of International Affairs" and "upon learning of the error" the prosecutor contacted the BOP to correct this error.

Before the BOP rolled back the credit Petitioner didn't have any reason or grounds to file any kind of motions. He expected to be released on February 28, 2018. Only recently Petitioner learned of all the facts and circumstances concerning the credit.

## 5. TIMELINESS OF THE § 2255 MOTION

Petitioner's § 2255 motion is timely submitted to this Honorable Court, because Petitioner was prevented from filing a motion by governmental action (government's errors explained in Background) and one-year period starts on the date the impediment was removed (pursuant to U.S.C. § 2255(f)(2)) and/or one-year period starts on the date on which the facts supporting the claim or claims presented could have been discovered (pursuant to U.S.C. § 2255(f)(4)). These government's errors and facts supporting the claim were discovered during a period of time from December 14, 2017 till March 30, 2018 and 1-year period of limitation started not earlier than December 14, 2017 and hence did not expire yet. The prosecutor herself confirmed government's errors (the BOP errors) in her response in Document 174 in Petitioner's docket. The claims in this Petition are a consequence of these errors. For example a fact that Petitioner didn't actually get foreign jail credit appeared only when the BOP rolled back the credit and as a result Petitioner's term of imprisonment effectively extended by more than 2 years. Petitioner didn't have any reason to submit this Petition before, because he had jail credit from the BOP and because he expected to be released on February 28, 2018.

## 6. WAIVER OF COLLATERAL ATTACK IN THE PLEA AGREEMENT

First, arguments below will also show that the Government breached the agreement during Petitioner's sentencing and therefore a waiver as well doesn't apply.

Second, although the plea agreement does contain a waiver, that waiver is unenforceable if, indeed, Petitioner's sentence is unconstitutional as he argues. See Williams v. United States, 2016 U.S. Dist. LEXIS 125853, 2016 WL 4917017, *3 (W.D.N.Y. Sept. 15, 2016) (citing United States v. Torres, 828 F.3d 1113, 2016 U.S. App. LEXIS 12941, 2016 WL 3770517, *8 (9th Cir. July 14, 2016)); see also United States v. Rosa, 123 F.3d 94, 101 (2d Cir. 1997). Therefore, the collateral attack waiver does not preclude the Court from entertaining Petitioner's present motion.

A defendant may challenge a federal criminal sentence "imposed in violation of the Constitution or laws of the United States" through a motion pursuant to 28 U.S.C. section 2255(a). Where the Court concludes that the sentence imposed was "not authorized by law," the Court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate" pursuant to 28 U.S.C. section 2255(b).

In the instant case, Petitioner shows that his constitutional rights were violated: ineffective counsel assistance (Sixth Amendment) and due process (Fifth Amendment).


## 7. SUMMARY OF THE ARGUMENTS

Petitioner asks the Court to review arguments related to:
- breach of plea agreement by the Government(Arguments 1,2,4,5,6)
- ineffective assistance of counsel (Argument 2-5,7-9).


## 8. ARGUMENTS REGARDING INEFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS VIOLATION

The Sixth Amendment of the Constitution of the United States of America provides for an accused's right to counsel:

> **"In a criminal prosecution, the accused shall enjoy the right...to have the assistance of counsel for his/her defense."**

An accused's Sixth Amendment right to the assistance of counsel is one of the most fundamental components of our criminal justice system. Through legal representation, the defendant's other pretrial and trial rights are secured. United States v. Cronic, 466 U.S. 648,

80 L. Ed. 2d. 657, 104 S. Ct. 2039 (1984); Gideon v. Wainwright, 372 U.S. 335, 9 L. Ed. 2d. 799, 83 S. Ct. 792 (1963). The right to counsel does mean the right to the effective assistance of counsel. McMann v. Richarson, 397 U.S. 759, 25 L. Ed. 2d. 763, 90 S. Ct. 1441 (1970).

The scope of the court review in evaluating a claim of ineffective assistance of counsel has been outlined for the Supreme Court in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d. 674, 104 S. Ct. 2052 (1984). In Strickland, the Supreme Court established a double part test. First, the defendant who is claiming ineffective assistance of counsel must demonstrate that his attorney's performance "fell below an objective standard of reasonableness." Id. at 688. Second, there must be a showing that there existed a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. And "failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Id. at 700.

The Supreme Court also advised that the appropriate standard for determining an attorney's performance is that of reasonably effective assistance under prevailing professional norms. Id. at 688. It emphasized that the underlying purpose of the Sixth Amendment requirement of effective assistance is "to insure a fair trial and achieve fundamental fairness." Id. at 686. (emphasis added). When measuring an attorney's performance the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having a just result." Id. at 686. The standard for deciding whether a claim of ineffective assistance of counsel mounts constitutional deprivations, is whether counsel's conduct so undermined the proper functioning of he adversarial process that the trial cannot be relied upon as having produced a just result. It is whether the deficient performance of counsel prejudiced the defendant. Id.

To comply with Strickland's requirements, a defendant must show that counsel's performance was deficient, and that deficient performance prejudiced the defense. Johnson v. United States, 2017 US Dist LEXIS 639912017 U.S. Dist. LEXIS 63991 (S.D. of Illinois, April 27, 2017). "Prejudice" is defined as an error that works to the actual and substantial disadvantage of a party, infecting the entire proceeding with error or constitutional magnitude. United States v. Frady, 456 U.S. 152 (1982).

Even if counsel is proven deficient, a Petitioner must also prove prejudice. To prove prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have

been different but for counsel's unprofessional errors." <u>Spiller v. United States</u>, 2015 U.S. Dist. LEXIS 63164 (N.D. Ill., May 14, 2015) (citing <u>Strickland</u>, 466 U.S. at 694. "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." <u>Id</u>. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable." <u>Id</u>. (quoting <u>Lockhart v. Fretwell</u>, 500 U.S. 364, 369, 113 S. Ct. 838, 122 L. Ed. 2d. 180 (1983).

On the other hand, effective assistance of counsel as guaranteed by the Sixth Amendment, is that quality of representation within the range of competence reasonably expected of attorneys in criminal cases, *i.e.,* that it fell below an objective standard of reasonableness. <u>Hicks v. Hepp</u>, 2017 U.S. App. LEXIS 17301 (E.D. Wis., Sept. 7, 2017). Although counsel is permitted great latitude in how he manages his case, his discretion is not limitless. His failure to act on behalf of his client's best interests deprives his client of effective counsel. *See* <u>Nutall v. Greer</u>, 764 F.2d 462 (7th Cir. 1985).

As Judge Wyzanski (U.S. District Judge for the District of Massachusetts) has written:

*"The adversarial process protected by the Sixth Amendment requires that the accused have counsel acting in the role of an advocate."* "[w]hile a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators." <u>See Gonzales v. United States</u>, 722 F.32 118 (2nd Cir. 2012). "The [Sixth] Amendment requires that the accused have counsel acting in the role of an advocate. The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted -even if defense counsel may have made demonstrable errors- the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated." <u>Cronic</u>, supra.

In applying the second part of the <u>Strickland</u> test, however, it appears that, assuming there were these failures in advocacy, when the Court examine in the light of the whole record, they will turn out to be more than sufficient to justify setting aside Petitioner's conviction or correcting sentence.

## 8.1. Arguments for ineffective assistance of plea attorneys: Jeremy Schneider, David Stern, Lucos Anderson

The right to such assistance in a criminal prosecution means the right to assistance at every stage of the proceeding. United States v. Pirtle, 2009 U.S. App. LEXIS 18810 (7th Cir. 2009). See also Von Moltke v. Gillies, 332 U.S. 708, 723-24 (1968); United States v. Plattner, 330 F.2d 271 (2nd Cir. 1964. This right is amplified by Fed. R. Crim. P. 44(a):

> "Every defendant who is unable to obtain counsel shall be entitled to have counsel assigned to represent that defendant at every stage of the proceedings from initial appearance before the magistrate or the court appointment."

The importance of the Sixth Amendment right to counsel is highlighted by decisions in Argersinger v. Hamlin, 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972), and Gideon v. Wainwright, supra. The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard with the assistance of counsel. A defendant requires the guiding hand of counsel at every stage in the prosecution against him. Powell v. Alabama, 287 U.S. 45, 68-69 (1932).

In the present case, this Honorable Court will find that under the Cronic standard, counsel was ineffective and that a specific finding of prejudice is not necessary. Additionally, this Honorable Court also will find that counsel's ineffectiveness did in fact prejudice the defense, as set forth in Strickland.

The test for prejudice under Strickland is whether there is a "reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." Id. at 694. A defendant need not shows that the attorney's mistakes altered the outcome of the trial. Rather, the "reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 694. It should be pointed out the Strickland, is also applicable to ineffectiveness claims in a guilty plea context. Hill v. Lockart, 474 U.S. 52, 57 (1985). "...plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process." Missouri v. Frye, 566 U.S. 134, 132 S. Ct. 1399, 1404, 182 L. Ed. 2d 379 (2012). Before enter plea, the counsel must also inform a defendant about the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed. Purdy v. United States, 208 F.3d 41, 45 (2nd Cir. 2000).

A criminal defendant is entitled by the Sixth Amendment to the help of a competent lawyer.

<u>Missouri v. Frye</u>, 132 S. Ct. 1399; <u>Vinyard v. United States</u>, 804 F.3d 1218, 1224 (7th Cir. 2015). If an attorney's performance falls below an objective standard of reasonableness and causes a defendant prejudice, post-conviction relief may be available. <u>Vinyard</u>, 804 F.3d at 1225 (citing <u>Strickland</u>). When conviction is obtained via plea, prejudice means that "[t]he defendant must show that if his counsel had not made the error of which he complains ... there was a reasonable probability that he ... would have gone to trial rather than have pleaded guilty." <u>DeBartolo v. United States</u>, 790 F.3d 775, 777-78 (7th Cir. 2015) (citing <u>Hill v. Lockhart</u>, *supra*. ). "The defendant must also show that to reject the plea bargain and go to trial would have been rational under the circumstances." <u>Id</u>. at 778 (citing <u>Padilla v. Kentucky</u>, 559 U.S. 356, 372, 130 S. Ct. 1473, 176 L. Ed. 2D 284 (2010)).

During plea allocution (page 5) Petitioner confirmed that he was satisfied with his attorney:

> The Court: Are you satisfied with you attorney?

> The Defendant: Yes.

But as was explained above only more then 2 years later (when the BOP rolled back his credit) Petitioner learned that his attorneys were ineffective.

### 8.1.1. ARGUMENT 1. Sixth Amendment and Due process violation regarding credit for Estonian sentence

One day before the plea was signed Petitioner's attorney (Jeremy Schneider) contacted the prosecutor (Sarah Lai) to clarify the details regarding Petitioner (Appendix A dated July 6, 2016):

> "I just wanted to confirm a few things that have been discussed, but not specifically included in the plea agreement."

In prosecutor's reply to Petitioner's attorney the Prosecutor (Sarah Lai) explained the situation regarding credit for Estonian sentence. Prosecutor wrote: "We would also ask the Court to make it clear on the record whether it has already taken the Estonian sentence into account, so that it's clear to BOP later and no double credit is inadvertently given" (Appendix A). From this explanation and from discussions with attorney Petitioner understood that credit for the Estonian sentence will be granted and the question is only by which party — the Court or the BOP. The purpose of the remark was to make sure that Petitioner doesn't get double credit, i.e. he is not inadvertently credited by both parties. But as Petitioner learned after December 14, 2017 (1.5 years after his sentencing), when the BOP rolled back the credit, that the BOP couldn't give such credit to Petitioner. Petitioner relied upon wrong information provided by

the prosecutor and his attorney about foreign jail credit. "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." (internal quotation marks and citations omitted). Greer v. Miller, 483 U.S. 756, 765, 107 S. Ct. 3102, 97 L. Ed. 2D 618 (1987). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2D 427 (1971). Petitioner's due process rights were violated. And proper remedy for Petitioner under Santobello is resentencing.

Attorney always assured Petitioner that Petitioner would receive credit for the time served on Estonian sentence. Attorney's position was:

> "that the time Tsatsin was in custody on this/related case, before he was brought to the United States (approximately 36 months) *should be credit towards* any sentence he receives here" (Appendix A).

To confirm to Petitioner that he would receive credit his attorney forwarded to him an email discussion with the prosecutor (Appendix A). Petitioner understood from the email that he should receive credit, which indeed he later obtained from the BOP.

Also, during the next day meeting attorney used this email to explain to the Petitioner that he should get credit from either the Court or the BOP, and he had nothing to worry about. At that moment Petitioner had already served a lot of jail time (a lot of time in pre-sentence custody) and with this credit he was expecting to be released shortly. All these false presentation of the facts mislead the Petitioner and his due process rights and Sixth Amendment rights were violated.


### 8.2. Arguments for ineffective assistance of sentencing attorneys: Arkady Bukh and Charles Kaser

The U.S. Supreme Court has said, in multiple occasions and since long time ago, that the Sixth Amendment right to counsel includes a right to counsel at the sentencing stage. See Melpa v. Rhay, 389 U.S. 128, 137 (1967); see also Glover v. United States, 531 U.S. 198, 203 (2001).

As the *Justices* have explained in other context, the right to effective assistance of counsel is an undisputed feature of the Sixth Amendment right to counsel. McMann v. Richardson,

*supra*. See also the seminal right to counsel case, <u>Power v. Alabama</u>, 287 U.S. 45, 71 (1932). Despite the fact that substantial advocacy occurs during the sentencing hearing, the standards for what constitutes ineffective assistance of counsel during the sentencing hearing, still are not totally established[1].

All the circuit courts have developed a considerable body of law regarding ineffective assistance of counsel in the context of the guilty plea stage of a criminal trial, but not much in the sentencing phase of non-capital cases. The vast majority of criminal defendants plead guilty rather than stand trial[2], and only during the sentencing proceedings the criminal defendants can see their counsel advocating for their interest in justice. This is the main reason why the claims for ineffective assistance of counsel at sentencing proceedings are quite common.

Arkady Bukh was retained by Petitioner after Petitioner signed the plea agreement. This attorney was supposed to know all the details of the Petitioner's case, but from the Sentencing Transcript it is clear that he didn't comprehend the facts or circumstances during the sentencing. He didn't object to anything and the <u>only</u> thing he said was: "My name is Arkady Bukh; I'm attorney for Mr. Tsastsin." Just this one fact shows the level of effectiveness of this attorney. Second attorney present at the Petitioner's sentencing was Charles Kaser. When the sentencing hearing started, Kaser said: "I just filed, I believe, a notice of appearance electronically today. I just want to make you aware of that because I haven't appeared on the record yet." According to what he said and the fact that Petitioner met him for the first time 5 minutes before the hearing shows the level of his preparation and knowledge of the Petitioner's case.

The facts presented below will show that during the sentencing attorneys were not only ineffective by not arguing and objecting, but also by presenting incorrect statements about this case.

---

1   See *A Capital Waste of Time? Examining the Supreme Court's "Culture of Death,"* Douglas A. Berman, 34 Ohio N.U. L. Rev. 861, 879-81 (2008) (arguing that the U.S. Supreme Court has failed "to give sufficient attention to non-capital" sentencing issues).

2   See *Punishing the Innocent*, by Josh Bowers, 156 U. Pa L. Rev. 1117, (2008): "In 2002, the plea rate nationally was 95% for all state court felony convictions...". See also *Plea Bargaining and Criminal Law's Disappearing Shadow*, by William J. Stuntz, 117 Harv. L. Rev. 2548 (2004): In 2000 there was a federal guilty plea rate of 95% and in some federal district, the rate exceeded 99%.

## 8.2.1. ARGUMENT 2. Ineffective assistance of counsel for failure to raise Government's breach of plea agreement regarding offense level

Plea agreements are interpreted in accordance with principles of contract law and are construed strictly against the government. United States v. Vaval, 404 F.3d 144, 152-53 (2d Cir. 2005); accord United States v. Green, 595 F.3d 432, 438 (2d Cir. 2010); Moore v. United States, 10 Cr. 954 (KBF), 10 Cr. 971 (KBF), 14 Cr. 3221 (KBF), 2015 U.S. Dist. LEXIS 20057, 2015 WL 715280 at *4 (S.D.N.Y. Feb. 19, 2015) (Forrest, D.J.). "To determine whether a plea agreement has been breached, a court must look to what the parties reasonably understood to be the terms of the agreement." United States v. Lawlor, 168 F.3d 633, 636 (2d Cir. 1999) (internal quotation marks and citation omitted). Where a defendant contends that the government has breached a plea agreement "by making allegedly impermissible comments to the sentencing court, [courts] consider the statements in context to determine if the government's commentary reasonably appears to seek to influence the court in a manner incompatible with the agreement." United States v. Navarro, 312 F. App'x 378, 379 (2d Cir. 2009) (internal citation and quotation marks omitted).

In accordance with those principles, courts "look[ ] to the reasonable understanding of the parties as to the terms of the agreement" in order to determine whether a plea agreement has been breached. United States v. Riera, 298 F.3d 128, 133 (2d Cir. 2002). "If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." Torres v. Walker, 356 F.3d 238, 245 (2d Cir. 2004). "Moreover, a party cannot create an ambiguity in an otherwise plain agreement merely by urg[ing] different interpretations in the litigation." Id.

Plea agreements are construed strictly against the Government and the court should not "hesitate to scrutinize the Government's conduct to ensure that it comports with the highest standard of fairness." United States v. Lawlor, 168 F.3d 633, 637 (2d Cir. 1999). Courts must also look to what the parties reasonably understood to be the terms of the agreement, and because plea bargains require defendants to waive fundamental constitutional rights, prosecutors are held to meticulous standards of performance. Id. at 636. In order to preserve the integrity of plea bargaining procedures and public confidence in the criminal justice system, a defendant is generally entitled to the enforcement of a plea agreement without showing a tangible harm resulting from a breach. Vaval, 404 F.3d at 155.

Petitioner's argument is that based on the facts presented below the Government breached the plea agreement and as a result Petitioner was sentenced on higher offense level. Petitioner signed a plea which stipulated the following:

1. The Guidelines Manual in Affect as of November 1, 2014, applies to this case.

2. Count One and Two are grouped into the single Group because of the offense level is determined largely on the basis of the amount of harm or loss, pursuant to U.S.S.G §3D1.1(a)(1) and §3D1.1(d).

3. The Guidelines that applies to Count One produces the highest offense level in the case. Because (A) the defendant was convicted on an offense referenced in the Guidelines; and (B) that offense of conviction has a statutory maximum term of imprisonment of 20 years or more, the Base Offense Level is 7, pursuant to U.S.S.G §2D1.1(a).

4. Because the lost amount was more then $1 million but not more than $2,500,000, the offense level is increased by 16 levels, pursuant to U.S.S.G §2B1.1(b)(1)(K).

5. Because of the offense involved more then 250 victims, the offense level is increased by 6 levels, pursuant to U.S.S.G §2B1.1(b)(2)(C).

6. Because [...] involved sophisticated means [...] the offense level is increased by 2 levels, pursuant to U.S.S.G §2B1.1(b)(10).

7. [...] acceptance of responsibility [...] a two-level reduction will be warranted, pursuant to U.S.S.G §3E1.1(a) [...] an additional one-level reduction is warranted, pursuant to U.S.S.G §3E1.1(b) [...]."

Guidelines offense level was **not** stipulated by the agreement: "In accordance with the above, the applicable Guidelines offense level is 28." Rather offense level by agreement was calculated as a sum of 7 stipulated terms. During Petitioner's sentence the prosecutor said (Sentencing Minutes, later SM; page 4): "So I've discussed this [guidelines issue] with defense counsel. The parties are in agreement under the *new guidelines*. The enhancement under 2B1.1, based on the number of victims, has been changed so that it is actually more lenient to the defendant." The prosecutor herself said on the record during the sentencing that parties were in new/modified agreement under the new guidelines. This modification in plea agreement has consequences for the calculation of the offense level. With new guidelines and stipulated terms the offense level should be 24 (or probably even less, as explained

below). All changes in the agreement were made on the record in the Court. If the plea agreement is modified the prosecutor and/or the Court should refer only to the new and final agreement and not to the old one, which was already modified.

But during sentencing(SM; page 5) the prosecutor said that the correct offense level in the plea agreement was 28. With this alone the prosecutor breached the agreement.

If the plea was breached by the Government, Petitioner should be resentenced according to the terms of the agreement and promises made by the prosecutor. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2D 427 (1971).

During the sentencing the prosecutor breached the plea agreement, and Petitioner's attorney didn't object to that. Bukh was totally silent and Kaser only said "Okay" (SM; page 5) to the offense level 28 instead of 24 (or probably even 22, as will be explained in Argument 5). It is clear that the prosecutor breached the plea agreement.

Attorney should have explained that since the "[...] parties are in agreement under the new guidelines," (SM; page 4) and according to stipulated conditions, the sum should be 24 and not 28. Plea agreement stipulated loss amount, quantity of victims and some other terms, but offense level wasn't stipulated and was calculated as a sum of all these terms. But attorney failed to refer and explain the details of the plea agreement.

As a result Petitioner's sentence would have been lower, because the offense level was calculated incorrectly. The offense level should have been 24 per the plea agreement, but the prosecutor argued for level 28 and the only thing that attorney said was "Okay". Thus defense counsel's representation fell below reasonable standards.

### 8.2.2. ARGUMENT 3. Ineffective assistance of counsel for failure to explain the Court's error in calculation of stipulated offense level. Sentence on the wrong guidelines

The Court erred and attorney failed to explain to the Court that only terms and not the offense level were stipulated in the plea agreement. To calculate correct stipulated offense level the Court should take the Sentencing Guidelines that are in effect on the date the Petitioner is sentenced and stipulated offense level will be a sum of terms under the current Sentencing Guidelines. Attorney failed to explain and the Court used incorrect stipulated offense level to sentence the Petitioner.

Marvin Peugh vs. Unites States 569 US 530, 133 S Ct 2072, 186 L Ed 2d 84, 2013 US LEXIS 4359 (2013):

> First, ``a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." <u>Gall v. United States</u>, 552 U.S. 38, 49, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007) (citation omitted).

> The district court ``may not presume that the Guidelines range is reasonable," <u>Id.</u>, at 50, 128 S. Ct. 586, 169 L. Ed. 2D 445, and it ``may in appropriate cases impose a non-Guidelines sentence based on disagreement with the [Sentencing] Commission's views," <u>Pepper v. United States</u>, 562 U.S. ___, ___, 131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011) (citing <u>Kimbrough v. United States</u>, 552 U.S. 85, 109-110, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007)). The district court must explain the basis for its chosen sentence on the record. <u>Gall</u>, 552 U.S., at 50, 128 S. Ct. 586, 169 L. Ed. 2d 445. ``[A] major departure [from the Guidelines] should be supported by a more significant justification than a minor one." <u>Id.</u>

> Under 18 U.S.C. § 3553(a)(4)(A)(ii), district courts are instructed to apply the Sentencing Guidelines issued by the United States Sentencing Commission that are ``in effect on the date the defendant is sentenced."

The Court sentenced Petitioner to 87 months, which appears to be a "guideline sentence." However, the Court's sentence was based upon an incorrect offense level of 28 (for level 28 the range is 78-97 months). Additionally, because the Court's position was that the sentence was within the Sentencing Guidelines, it didn't provide any reasons or justifications for exercising its discretion with the sentence. Petitioner's argument is that the correct offense level was 24 points, which corresponds to a range of 51-63 months (Petitioner can even argue that correct level was 22 as explained below). Because 87 months sentence would be considered an "upward departure" from the correct range of 51-63 months, it is impossible to say that offense level 24 would not have had any effect on the sentence.

As a result of incorrectly calculated offense level Petitioner received higher sentence. Not only his right for an effective defense counsel was violated, but also his right to due process. Thus defense counsel's representation fell below reasonable standards.

### 8.2.3. ARGUMENT 4. Ineffective assistance of counsel for failure to raise Government's breach of plea agreement regarding offense level for leadership role

During the sentencing the prosecutor said that Sentencing Guidelines became more lenient to Petitioner. And as explained above offense level should have been 24. But to bring offense back to level 28 and to justify it, the prosecutor said something about leadership

enhancement (SM; page 5). This was a breach of the plea agreement. Otherwise it is not clear at all how the prosecutor came to offense level 28 under the modified plea agreement which was already "under new Sentencing Guidelines".

It is clear that with the same stipulated terms on the day of the sentencing the offense level in the agreement should have been 24, and to make it 28 it was necessary to add something. The only reason to add leadership points when Sentencing Guidelines became more lenient to Petitioner was to return the level back to 28. Prosecutor was not answering the Court's questions relevant to the sentencing, but argued it herself, hence she breached the agreement.

Before the plea was signed the prosecutor also explained her position about leadership points: "[...] we will not be advocating for leadership points and will defend that position if questioned about it" (Appendix A). And in the same email exchange Petitioner's attorney wrote: "I expressed my concern about the fact that even though Tsatsin was not getting leadership points in the plea agreement, what will the govn't say if Judge Kaplan asks. Paul [another prosecutor] assured me that Sarah will be able to articulate reasons why he was not getting those points." But during the sentencing the prosecutor said: "I'm saying that when the Court calculates the guidelines for the record based on what probation has set forth in the PSR..." (SM; page 5), but the PSR recommended 4 point leadership enhancement. The prosecutor during the sentencing didn't "defend" her position as she had promised that Petitioner would not get this enhancement. Instead of defending, during the sentencing (SM; page 14) it was said:

> The Court: My understanding was that this defendant was the ringleader. Is that wrong?
> Ms. Lai: He was, yes. No it's not wrong. Your Honor.

The prosecutor during the sentencing breached the parties' agreement, calling Petitioner the leader. When Petitioner signed the plea, he understood that the prosecutor "will defend" the absence of leadership points but during the sentencing she changed her position to the opposite. In doing so, she broke a promise on which the plea was based.

Prosecutor requested the Sentencing Judge for the enhancement for the leadership role by raising the offense level from 24 to level 28 and did not "defend" opposite position. In a violation of Santobello v. New York, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2D 427 (1971).

"Even though the Government has an affirmative duty to furnish all relevant information to the

Court at sentencing proceedings, see United States v. Saxena, 229 F.3d 1, 6 (1st Cir. 2000) ("[T]he government has an unswerving duty to bring all facts relevant to sentencing to the judge's attention."), the Plea Agreement obligated the Government to request the Sentencing Judge to act only the terms stipulated in the agreement [...]. It is undisputed that there existed an integrated written plea agreement between Petitioner and the Government, which Petitioner did plea guilty upon. "[...] written agreements hold a special place in the eyes of the law." Petereit v. S.B. Thomas, Inc., 63 F.3d 1169; 1995 U.S. App. LEXIS 23310.

The prosecutor named Petitioner as a leader, and this influenced the Court's decision. And even during the imposition of the sentence the Court said: "You and your subordinates [...]". The prosecutor breached the parties' agreement, and as a result the Court was persuaded to give a higher sentence without preponderance of any evidence (and without acceptance of the fact by Petitioner).

Petitioner couldn't imagine that after the prosecutor agreed that Petitioner shouldn't get leadership points (and didn't include them in the plea agreement) and also confirmed that she was going to defend that position and find arguments for that, that later during the sentencing she would say that it was all just a "practical calculation" (SM; page 14-15).

With all of the above the prosecutor breached the plea agreement by adding leadership points to plea agreement and as a result increase offense level from 24 to 28. But even worse than that, Petitioner's attorneys failed to object, and this was ineffective assistance of counsel.

### 8.2.4. ARGUMENT 5. Ineffective assistance of counsel for failure to raise Government's breach of plea agreement regarding loss amount

In the plea agreement that Petitioner signed loss amount was set as "more than $1Million but less than $2.5 Millions". And he was sure that he was going to be punished for that amount of loss. Petitioner agreed with the prosecutor that such amount was proper in his case. And Petitioner couldn't expect anything other than that amount. But during the sentencing, the following exchange occurred (SM; page 15):

> The Court: [...] the government's position would be that the loss amount in this fellow's case would be more probably 14 million than two and-a-half million, but for reasons satisfactory to the government, you agreed to two and-a-half million; is that about correct?
> Ms Lai: Yes.

How could Petitioner know when he signed the plea that the prosecutor would nullify the

agreement and in fact would advocate to punish him for 14 millions? The Court and the prosecutor didn't increase offense level for larger loss amount, but during imposition of the sentence the Court clearly explained the length of the sentence with the following:

> The Court: Mr. Tsastsin, please rise for the imposition of sentence. [...] The losses you caused were at least $14 million.

The prosecutor wasn't acting with fundamental fairness and in good faith. The prosecutor argued that the results of Petitioner's actions was a loss amount that is much higher than stipulated in the plea agreement. And this too influenced the Court's decision. The prosecutor breached the plea agreement, and as a result the Court was persuaded to give a higher sentence. It is important to note that the prosecutor was using the facts that were not stipulated in the plea without preponderance of any evidence or acceptance of those facts by the Petitioner. Probation Officer in the PSR also didn't say anything about $14 millions. In fact it said otherwise: "As the loss amount attributable to Tsastsin was approximately $2.500.000". And also in "Victim Impact" the PSR stated: "The Government is unable to specifically qualify the loss amounts suffered by the victimized companies". Petitioner didn't argue for a lower loss amount, even though the Government was unable to quantify the loss. Petitioner was bounded by the agreement, but the Government argued for a higher loss and breached the contract.

Also the plea agreement stipulated a loss amount of "more then $1 million but not more than $2,500,000" which corresponded to 16 points under the old guidelines. Under the new sentencing guidelines the same range falls between 14 and 16 points (more than $550,000 but less than $1,500,000 is 14 points; more than $1,500,000 and less than $3,500,000 is 16 points). Under the new Guidelines the upper limit of the old Guidelines now falls in the middle of the range, while the lower limit is in lower point zone. This issue was not clarified by the prosecutor in the plea agreement and could be understood ambiguously. So the correct offense level should have been 22. These two extra points are also a reason for an incorrect offense level and a higher sentence.

It is important that during this long discussion between the prosecutor and the Court neither of the Petitioner's attorneys objected to anything, they just didn't say a word. In the plea agreement the loss amount that was stipulated was 5 times less than what it turned out to be at the sentencing hearing and Petitioner didn't accept leadership enhancement points, but

attorney failed to say anything. Once again, defense counsel's representation fell below reasonable standards, and was ineffective.

As a result of breach of the terms of the plea agreement Petitioner's Fifth Amendment rights for the due process were violated. And as a result Petitioner received higher sentence.

### 8.2.5. ARGUMENT 6. Breach of plea agreement by changing forfeiture

Before Petitioner signed the plea agreement he had long negotiations about the forfeiture. Appendix C contains the draft of his plea, dated April 29, 2015. A handwritten note by Jeremy Schneider on the front page says: "Draft – not the most recent agreement. Different forfeiture". On pages 2-4 of the same draft there is a list of property which Petitioner was supposed to agree to forfeit:

    1) A sum of money in equal to $2.5 million dollars

    2) All rights title and interest in:

        A) long list of bank and investment accounts

        B) computers and computer peripherals (more than 100 servers)

        C) IP(Internet Protocol) addresses

Only Part One of this forfeiture survived in the Petitioner's final plea agreement, Part Two was removed. When Petitioner signed the plea he was sure that his forfeiture will not be more than $2.5 millions. During the plea allocution hearing the Court asked the Petitioner only about $2.5 millions (Part One), unlike other defendants in this case which agreed to forfeit their rights and interests in both Parts One and Two. However, other co-defendants didn't have any rights in bank/investment accounts (2.A.i, 2.A.v, 2.A.vi, 2.A.vii) and other property listed in 2.B and 2.C (See Appendix C).

In Honeycutt v. United States, 137 S. Ct. 1626, 198 L. Ed. 2d 73 (2017), the Supreme Court held that § 853(a) does not permit "joint and several liability for forfeiture judgments," 198 L. Ed. 2d at 81, [WL] at *4-5, thereby abrogating Second Circuit case law. See, e.g., United States v. Benevento, 836 F.2d 129, 130 (2d Cir. 1988). Accordingly, "[f]orfeiture pursuant to § 853(a)(1) is limited to property the defendant himself actually acquired as the result of the crime." Honeycutt, 198 L. Ed. 2d at 85, 2017 WL 2407468, at *9. The Supreme Court held that the forfeiture provision, does not permit a defendant to be held jointly and severally liable for property derived by his co-conspirators from the crime. With that the Supreme Court in

Honeycutt found "most clear[ly]" to limit forfeiture to personal liability.

Petitioner was incarcerated from November 8, 2011 and hasn't had a chance to contact the banks. Petitioner never saw final forfeiture order and only recently Petitioner found out that money from the bank/investment accounts were taken by the U.S. authorities. Petitioner agreed to forfeit $2.5 millions, however more than $2.5 millions were still frozen or seized from the bank/investment accounts (which he didn't agree to forfeit at all). It is clear from the record of the plea negotiations that bank/investment accounts, computers and IP addresses were specifically removed from the terms of the agreement. But later the Government nonetheless froze or seized more than $2.5 millions and other property (bank/investment accounts, computers and IP addresses) which were not part of the final agreement at all. The prosecutor breached the plea agreement by seizing the property that was not part of the plea.

Petitioner is currently serving his sentence in the MVCC and doesn't have any possibility to present bank/investment account statements. The list of property (money, computers and IP addresses) that was forfeited from the Petitioner alone (and not from his co-defendants) can be presented to the Court by the Government. Petitioner asks the Court to request from the Government an accounting of Petitioner's forfeiture.

Current Petitioners' forfeiture is illegal. Petitioner prays the Court to order the Government to forfeit only the property that is listed in his plea agreement and his Judgment and return whatever is held illegally.

### 8.2.6. ARGUMENT 7. Ineffective assistance of counsel for failing to request an application of U.S.S.G. § 5G1.3(b)

As explained in the Background, Petitioner has an undischarged term of imprisonment for relevant conduct. But U.S.S.G. § 5G1.3(b) is not mentioned in any of the documents: PSR, Government Sentencing Memorandum, Defense Sentencing Memorandum and during sentencing attorney failed to address to U.S.S.G. § 5G1.3(b), which is applicable to Petitioner. Attorney didn't explain or mention why this provision is applicable and that part (b) and not some other part should be applied.

Provision (b) of U.S.S.G. §5G1.3. Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment or Anticipated State Term of Imprisonment states:

(b)     If subsection (a) does not apply, and a term of imprisonment resulted from

another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows:

(1)　　the *court shall adjust* the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

(2)　　the sentence for the instant offense *shall be imposed to run concurrently* to the remainder of the undischarged term of imprisonment.

Petitioners' attorneys failed to request both adjustment of the sentence and concurrency. Also attorneys failed to explain the following terms, so the Court could apply U.S.S.G. § 5G1.3(b):

**a) Relevant element.** Attorney didn't once mention that the US case and the Estonian case involve "relevant conduct". Kaser only said that charges arise from the same incidents (SM; page 10). However, phraseology "arise from the same incidents" does not explain a relationship between the cases. Are they related or relevant, partly relevant or not relevant at all? Attorney also didn't request to correct the PSR, because PSR stated that Petitioner didn't have any related cases (more information about failure to object the PSR report is presented in Argument 8). From the sentencing transcript (page 10) it is clear that the Court considered Estonian and US cases as completely different:

> The Court: My understanding was that he was prosecuted and convicted for money laundering by Estonia, right?
> Kaser: I believe that is the case; correct
> The Court: He wasn't prosecuted for the fraud.

And when attorney tried to say that Estonia could have gone after those [U.S.] offenses, the Court responded: "I'm not sure of that at all."

It is clear from this discussion that the relationship between the cases was not clarified.

**b) Undischarged element.** It is explained above that Petitioner had an undischarged term of imprisonment, but during the sentencing his attorney never argued that Petitioner had one. Kaser even said (SM; page 11): "[...] I am just asking that in light ... of the fact that he has been incarcerated, that he be sentenced to time served so he can face the issues now in Estonia where he will be sentenced". It seems that attorney was implying that Petitioner had an anticipated but not an undischarged term of imprisonment (that is, attorney was saying that Petitioner was not yet sentenced in Estonia). And by presenting this obviously incorrect

statement attorney might have misled the Court to take into consideration incorrect provision of law – U.S.S.G. §5G1.3(c) instead of U.S.S.G. §5G1.3(b).

**c)** During sentencing attorney also didn't mention that such credit for Estonian sentence couldn't be granted by the BOP. Because if the Court relied on the BOP to issue the appropriate credit, the attorney needed to bring to the attention of the Court the fact that it is not the BOP's authority.

Therefore attorney never mentioned application of U.S.S.G. §5G1.3(b), didn't explain that cases involve "relevant contact", and that Petitioner has an undischarged term of imprisonment. Attorney Kaser simply didn't know the details of the case. And along with the fact that Petitioner met him for the first time just 5 minutes before the sentencing, it becomes clear that in such situation counsel's assistance was ineffective (keeping in mind that another attorney Bukh was silent for the whole length of the sentencing hearing).

As a result of ineffective assistance of counsel, the Court didn't review application of U.S.S.G. §5G1.3(b) in this case because of the following facts:

**1)** Nobody during the sentencing hearing mentioned U.S.S.G. §5G1.3 even once.

**2)** Sentencing Guidelines are advisory, but "the Guidelines should be the starting point and the initial benchmark." <u>Gall</u>, 128 S. Ct. at 596. In <u>Crosby</u>, the Second Circuit addressed precisely how district courts should approach sentencing after <u>Booker</u>: "First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in [18 U.S.C. § 3553(a)]. Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range, or at least identification of the arguably applicable ranges, and consideration of applicable policy statements." To consider the Guidelines the Court "must first figure out whether it correctly determined the applicable provision of § 5G1.3." <u>United States v. John V. Nania</u>, 724 F.3d 824; 2013 US App LEXIS 15575 (7th Cir.) and "must determine from Parts B through G of Chapter Five the sentencing requirements and options related to probation, imprisonment, supervision conditions, fines, and restitution." U.S.S.G. § 1B1.1(h)." <u>United States v. Warren Eric Armstead,</u> 546 F3d 1097; 2008 US App LEXIS 21566 (9th Cir.), <u>also United States v Tyre Antoine Johnson</u>, 529 Fed Appx 362; 2013 US App LEXIS 12579 (4th Cir.).

If U.S.S.G. §5G1.3 wasn't even mentioned, then surely it couldn't have been "correctly determined [which provision is] applicable" in this case.

So even if the Court was considering U.S.S.G. §5G1.3 in this case, the Court might have been considering to apply part (c) of this provision, because attorney was talking about anticipated term of imprisonment and in case of application of part (c) the Court doesn't need to adjust the sentence and was using it's discretion to do so. Or if the Court was considering part (d), as it is not clear from attorney's explanation (or better to say the absence of explanation) that the cases are relevant, then the Court had discretion to impose the sentence concurrently, partially concurrently, or consecutively. And the Court could have used its discretion to apply consecutive sentence without explanation. But as explained above, part (b) of the U.S.S.G. §5G1.3 should be applied in Petitioner's case, in which case contrary to part (d) a concurrent sentence must be imposed.

**3)** In Petitioner's case the Court didn't mention that it was going to impose a sentence with some deviation from the Sentencing Guidelines, which shows that the Court did not consider application of U.S.S.G. §5G1.3, otherwise the Court would have adequately explained the reasons for the deviation in the Judgment (or during the sentencing). "Because U.S. Sentencing Guidelines Manual § 5G1.3(b)(2) is mandatory, a court's declining to make the adjustment results in a sentence that departs from the United States Sentencing Guidelines. Because the Guidelines are advisory, a sentencing court is free to impose a sentence outside of the Guidelines. If it does so, however, the court must adequately explain the reason(s) for the deviation. [...] Supreme Court and this Court have repeatedly emphasized the centrality of the Guidelines and the need for the sentencing court to explain any deviation from the Guidelines [...]" United States v. Warren Eric Armstead, 546 F3d 1097; 2008 US App LEXIS 21566 (9th Cir.). See also United States v. Christopher Carter, 652 F3d 894; 2011 US App LEXIS 18019 (8th Cir.), United States v. Estrada, 312 F. App'x 664, 666 (5th Cir. 2009). Also in United States v. Lervon L. Campbell 617 F3d 958; 2010 US App LEXIS 17117 (7th Cir.):

> "If the district court disagrees with the methodology set forth in § 5G1.3--which it necessarily will be doing if it grants the adjustment--an adequate explanation to "allow for meaningful appellate review and to promote the perception of fair sentencing" should be given". Gall v. United States, 552 U.S. 38, 50, 128 S. Ct. 586, 169 L. Ed. 2D 445 (2007);

**4)** The Court under Fed. R. Crim. P. 32(h) didn't notify Petitioner nor his attorney about any departures, because the Court didn't know that any departures were applicable, otherwise the

Court would have appropriately notified the parties before the sentencing. In <u>United States v. Blaine Travis Fifield</u>. 432 F3d 1056; 2005 US App LEXIS 29011(9th Cir.):

> "there is an implicit notice requirement in Fed. R. Crim. P. 32 for sentencing decisions that are "analogous" to an upward departure in that they are "not expressly contemplated by the guidelines" and are therefore outside of the range of expectations. The notice requirement now codified in Rule 32(h) was implicit in an earlier version of Rule 32, which did not contain what is now Rule 32(h). A defendant is entitled to notice that a court is considering imposing a condition on supervised release when that condition is not one of the conditions listed in the U.S. Sentencing Guidelines Manual (Guidelines). When sentencing decisions are expressly contemplated by the Guidelines, however, the Ninth Circuit holds that Rule 32 does not impose an additional specific notice requirement."

And in <u>United States v. Brett Hahn</u>, 557 F3d 1099; 2009 US App LEXIS 4234 (9th Cir.):

> "The parties do not dispute that this case falls under § 5G1.3(b), that a decision to impose consecutive sentences where § 5G1.3(b) applies is a departure, and that as a result Rule 32(h) required that the parties have notice before the district court could impose a consecutive sentence. The parties disagree, however, about whether the arguments advanced in their sentencing memoranda provided adequate notice such that the district court could impose a consecutive sentence without running afoul of Evans-Martinez. [2] The purpose of Rule 32 is to provide "full adversary testing of the issues relevant to a Guideline sentence[.]" Evans-Martinez, 530 F.3d at 1168 (quoting <u>Burns v. United States</u>, 501 U.S. 129, 135, 111 S. Ct. 2182, 115 L. Ed. 2d 123 (1991)). The parties must have notice "to ensure that issues with the potential to impact sentencing are fully aired." Id. Under the plain language of Rule 32(h), the PSR and the parties' own prehearing submissions can provide adequate notice of a departure. The district court itself is required to give notice of its intent to depart only when the PSR and the parties' prehearing submissions fail to identify the ground for departure. Fed. R. Crim. P. 32(h)."

The facts presented above in paragraphs 1-4 show that the Court wasn't considering U.S.S.G. § 5G1.3(b) at all during the sentencing.

But if we assume that the Court somehow was considering application of U.S.S.G. § 5G1.3(b), but didn't apply it, then the Court departed from the Sentencing Guidelines. And the Court:

1) didn't notify Petitioner or his attorney about this departure according to Fed. R. Crim. P. 32(h);

2) didn't specify from which provision of U.S.S.G. § 5G1.3 the Court departed;

3) didn't explain in the Judgment the reasons for the departure. ``[A] major departure [from the Guidelines] should be supported by a more significant justification than a minor one." <u>Gall v. United States</u>, 552 U.S. 38, 49, 128 S. Ct. 586, 169 L. Ed. 2D 445

(2007).

And if that assumption is correct then attorney committed even more mistakes and his assistance was even more ineffective, because in addition to all of the Arguments mentioned above, he also failed to mention a notification according to Fed. R. Crim. P. 32(h), failed to clarify from which provision of U.S.S.G. § 5G1.3 the Court departed and failed to request justifications of the departure in the Judgment.

With all the facts presented above it is clear that it is not only attorney's failure to adequately argue the application of U.S.S.G. § 5G1.3(b) in that case but as a result of his ineffectiveness the Court didn't consider any departures from the Sentencing Guidelines, because otherwise the Court would have notified the parties under Fed. R. Crim. P. 32(h), determining which part of U.S.S.G. §5G1.3 was applicable in this particular case, and if the Court would have departed from the Sentencing Guidelines, then it would have adequately explained the reasons for the deviation. Petitioner shows that the Court did everything according to U.S. law, because the Court just didn't have adequate information about the Petitioner's case. But in case the counsel have been able to effectively represent the facts the Court would have taken into consideration U.S.S.G. § 5G1.3(b) and Petitioner's sentence would have been lower.

### 8.2.7. ARGUMENT 8. Ineffective assistance of counsel. Attorney failed to adequately investigate the case and request correction in the PSR

The right to counsel is more than an illusory promise; it is the right to the effective assistance of counsel. See e.g., Gaines v. Hopkins, 575 F.2d 1147 (5th Cir. 1978) (failure of court appointed counsel to investigate the defendant's case deprived defendant of effective assistance of counsel). At the outset, counsel has an obligation to conduct a reasonable amount of pretrial investigation. Strickland, supra. The amount of investigation depends upon the number of issues presented, the complexity of those issues, and the respective strategies of opposing counsel. Nealy v. Cabana, 764 F.2d 1173, 1177 (5th Cir. 1985). Only when reasonable investigation has been performed is counsel in a position to make informed tactical decision. It is especially important that counsel adequately investigate the case in order that at the very least he can provide minimally competent professional representation. United States v. Barbour, 813 F.2d 1232 (D.C. Cir. 1987). As was stated in Crisp v. Duckworth, 743 F.2d 580 (7th Cir. 1984), "Effective representation hinges on adequate investigation and

pretrial preparation...[for] investigation may help an attorney develop or even discover a defense, locate a witness or unveil impeachment evidence." Id. at 583 (citing United States v. DeCoster, 159 U.S. App. D.C. 326, 487 F.2d 1197, 1204 (D.C. Cir. 1973).

The duty to investigate "requires counsel to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Greiner v. Wells, 417 F.3d 305, 320 (2d Cir. 2005) (quotations and citation omitted). "It does not, however, compel defense counsel to investigate comprehensively every lead or possible defense." Greiner, supra at 320.

On August 19-20, 2015 Petitioner met with his plea attorney and reviewed Presentence Investigation Report dated 08/19/2015. He made notes and asked the attorney to file objections: a) to the leadership points (PSR paragraph 66); b) specify that there wasn't substantial hardship to any victim (Victim Impact, paragraph 55); c) to make PSR recommendation to credit petitioner for relevant conduct in Estonia (pursuant U.S.S.G §5G1.3).

In the case at hand attorney failed to investigate and object. On the second page of the PSR:

"Related Cases: None"

As explained above Petitioner has relevant cases in the US and in Estonia. Estonian money laundering conduct is relevant because "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G § 1B1.3(a)(1)(A). But attorney failed to request a correction from the U.S. Probation Officer. On page 26 of the PSR:

"Objections:

By the defendant

To date, no objections have been received from the defense."

It was also explained above that even the prosecutor confirmed to the attorney that she is going to defend position that Petitioner shouldn't get leadership points. So it is totally unreasonable not to object to the leadership points. They were not part of the plea agreement, prosecutor supported and defended this position, but attorney failed to even mention this.

Probation Officer requested to object, concur or decline to comment on August 19, 2015, but Petitioner changed the attorney in the end of August 2015 (he filed a notice of attorney

appearance on September 9, 2015). So the previous attorney (Jeremy Schneider) didn't reply to Probation Officer, because he thought that new attorney (Arkady Bukh) is going to do that, but the new attorney relied on his predecessor to do it.

Probation Officer didn't know that attorney was changed and on September 30, 2015 sent the PSR (Appendix E) to the former attorney (Jeremy Schneider).

On the second page of Presentence Investigation Report dated 08/19/2015 which Petitioner reviewed there was a form that needed to be filled out to make any objections within 14 days. The form included several options: a) to decline to comment b) to concur with the facts c) to object to certain information. Petitioner never signed this page (Appendix D; page 2), because he was waiting for the attorneys to file Petitioner's objections.

It is very likely that neither the former attorneys nor the new ones signed this document because they relied on each other to do this. In this case only the Probation Officer can confirm or deny if this document was signed. And if the former attorney (Jeremy Schneider) signed it, then did he have a right to sign if he was already fired?

So the question is if anybody signed the form that requested to decline to comment, concur or object (Form 456A). Petitioner wants to request this document from the Probation Officer to clarify this question.

Even more than that, Petitioner only saw Presentence Investigation Report dated 08/19/2015. Attorney failed to show him Presentence Investigation Report dated 09/30/2015. He only mentioned that "PSR recommended 60 months" five minutes before the sentencing hearing. Petitioner reviewed the PSR dated 09/30/2015 only after the sentencing. When during the plea hearing Petitioner answered the question regarding the PSR report he was referring to the PSR dated 08/19/2015 and not to the PSR dated 09/30/2015. That is a serious violation of the due process, because PSI report is a document on which a defendant relies to prepare his defense.

As a result the Court had incorrect information about the relationship between US and Estonian cases. Also if attorney explained to the Probation Officer the circumstances of the case at hand and Probation Officer agreed that cases were relevant then the officer usually makes a recommendation on which part of U.S.S.G. § 5G1.3 should be applied. The Court relied on incorrect information because of the ineffectiveness of Petitioner's attorney and as a result Petitioner received higher sentence.

Also Petitioner's PSR calculation was based on the Sentencing Guidelines Manual in effect as of November 1, 2014, but the Sentencing Guidelines changed and became more lenient to the Petitioner after November 1, 2015 as explained in Argument 2. But the attorney never requested a new PSR recommendation. However, more lenient Sentencing Guidelines should be reflected on the PSR's recommendation for Petitioner's sentencing.

Therefore, assistance of counsel was ineffective.

### 8.2.8. ARGUMENT 9. Ineffective assistance of counsel for failing to file a timely Notice of Appeal

Just 10 minutes before sentencing attorney promised to the Petitioner that he will not get more than 60 months of imprisonment based on attorney's own conclusions, derived from the PSR recommendation. Petitioner was sentenced to 87 months. After that Petitioner asked attorney to file a notice of appeal, but attorney said that Petitioner didn't have any grounds for a successful appeal and only Rule 35 could help if Petitioner wanted to reduce his sentence. Attorney argued against the appeal in light of the fact that the Court had already sentenced Petitioner to a term within his plea agreement's stipulated Guidelines range. However, despite his counsel's position against an appeal, Petitioner ordered his counsel to file a notice of appeal and bring the case to the 2th Circuit. Defense counsel ignored Petitioner's request. He completely missed that Petitioner was in fact sentenced on incorrect offense level. Attorney even explained that credit for foreign jail time will be granted by the BOP. And later the BOP indeed granted the credit, but because of "misunderstanding" and "errors" (Petitioner's Docket; Document 174), as prosecutor stated later and not according to the Law. Petitioner did not know anything about that at that time.

"It is well known that a defense counsel has a "constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." See Roe v. Flores-Ortega, 528 U.S. 470, 484, 120 S. Ct. 1029, 145 L. Ed. 2D 985 (2000).

It should be pointed out the law of the Second Circuit mandates that counsel file a notice of appeal at defendant's request even if counsel believes the appeal to be frivolous, Campusano v. United States, 442 F.3d 770 (2d Cir. 2006). Thus, defense counsel's failure to file an appeal

violates the Sixth Amendment, when counsel "ignor[es] a defendant's explicit direction to [do so]." Fernandez v. United States, 146 F.3d 148, 149 (2d Cir. 1998).

Attorney failed to file a timely Notice of Appeal, saying that Petitioner's appeal will be unsuccessful even though Petitioner asked him to file it. Petitioner disagreed with attorney's arguments not to file an appeal. All mistakes and ineffectiveness of attorney would have surfaced with the appeal. With facts explained in other arguments of this motion it is clear that Petitioner had grounds for an appeal: (a) failure to raise breach of plea; (b) failure to properly request application of U.S.S.G. § 5G1.3(b); (c) sentencing on the incorrect offense level of 28 instead of 24. It's evident that with his advice not to file an appeal attorney was trying to cover his ineffective work. As a result Petitioner lost the possibility to appeal the case.

With regards to defense counsel's failure to file a notice of appeal, Petitioner has satisfied both prongs of the Strickland test. First, Petitioner has showed that defense counsel's representation fell below an objective standard of reasonableness. And also Petitioner has showed that counsel discouraged the Petitioner to seek an appeal. Second, Petitioner has established actual prejudice. Because Petitioner is challenging his sentence on the grounds for which he claims he could have sought appeal, defense counsel's actions affected the outcome of his proceeding.


## 9. LANGUAGE ISSUE

Petitioner asks the Court to review his arguments in the light that his native language is Russian. English is his third language. Petitioner was extradited from another country, he never lived in the United States for a long period of time, so he never had real language practice. While he does speak English, his level of proficiency is not enough to understand all the fine details of the plea bargaining discussions and the language of the plea agreement. He didn't have an interpreter present when his attorney explained all the details of the plea agreement and application of the credit.


## 10. EVIDENTIARY HEARING

Petitioner requests from this Honorable Court to hold a factual hearing to resolve Petitioner's claims raised in this Petition. An evidentiary hearing would add some light to the proceedings. The Petitioner "need[s] establish only that he has a 'plausible' claim of ineffective assistance

of counsel, not that he will necessarily succeed on the claim." Raysor v. United States, 647 F.3d 491, 494 (2d Cir. 2011) (quoting Puglisi, 586 F.3d at 213). And, where, as here, a petitioner is appearing pro se, the court must construe his habeas petition liberally and interpret it to raise the strongest arguments that it suggests. See Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001).

"To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the movant] to relief." Gonzalez v. United States, 722 F.3d 118, 131 (2d Cir. 2013). Where the asserted basis for relief is ineffective assistance of counsel, a hearing is required "in cases where the petitioner has made a 'plausible claim.'" Morales v. United States, 635 F.3d 39, 45 (2d Cir. 2011).

Although the court must "view[] the evidentiary proffers, where credible, and record in the light most favorable to the petitioner," the court "need not assume the credibility of factual assertions... where the assertions are contradicted by the record in the underlying proceeding." Puglisi, 586 F.3d at 214.

This determination is "analogous" to summary judgment proceedings: "If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made." Raysor. (quoting Puglisi, 586 F.3d at 213).

As factual dispute in the motion's arguments turns upon the actual credibility of the facts and occurrences outside the courtroom, then a relevant evidentiary hearing should be held.


**11. CONCLUSION**

WHEREFORE, for the foregoing reasons, Petitioner Vladimir Tsastsin, very respectfully and humbly, prays this Honorable Court to grant his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.


Dated: June 20, 2018                                   Very Respectfully Submitted,

                                                       **Vladimir Tsastsin**

**Appendix A** – Email discussion between Petitioner's attorney Jeremy Schneider and prosecutor Sarah Lai, dated July 06, 2015.

**Appendix B** - GEO Memorandum dated June 10, 2016, based on information received from DSCC(Designation & Sentence Computation Center).

**Appendix C** – Plea draft to Petitioner dated June 29, 2015 provided by Jeremy Schneider.

**Appendix D** – Presentence Investigation Report dated 08/19/2015 (pages 1-3).

**Appendix E** – Presentence Investigation Report dated 09/30/2015 (pages 1, 26).

**Appendix A**

-------------------------------------------------------------------------------

FROM: Anderson, Lucos
TO: 91040054
SUBJECT: Email from prosecutor
DATE: 07/06/2015 06:36:03 PM

Hello Vladimir,

Jeremy wanted me to send you this email exchange (below) which he and the prosecutor had today. I hope you're holding up.

Best wishes,

Lucas

---

Hi Jeremy,

As I recall, we had discussed all of these issues by phone. I also mentioned it s important that Tsastsin be able to allocute truthfully that no promises were made other than what was contained in the plea agreement. The following is what we had discussed:

1.    The Government does not intend to prosecute Tsastsin for distributing fake antivirus software, although we believe it is a relevant 3553(a) factor for sentencing purposes.

2.    Based on the evidence we currently have, we don t plan to arrest or prosecute anyone else in Tsastsin s family.

3.    The Government takes no position on whether the Court takes into consideration his Estonian sentence in fashioning an appropriate sentence for the US conviction. We would inform the Court of Estonia s different parole policy. We would also ask the Court to make clear on the record whether it has already taken the Estonian sentence into account, so that it s clear to BOP later on and no double credit is inadvertently given.

4.    Regarding your earlier conversation with Paul, my understanding is that while we will not be advocating for leadership points and will defend that position if questioned about it, we, of course, plan to advise the court of what we believe his role was in the offense, particularly as compared to the other defendants. (In any event, information regarding Tsastsin s role was already set forth in the Government s sentencing submission with respect to codefendant Valeri Aleksejev and provided to Probation.)

Looping in Alex Wilson, who will be covering the plea. If you could email us Tsastsin s expected plea allocution in advance of the plea proceeding, it would be helpful.

Regards,

Sarah Lai

Assistant United States Attorney

U.S. Attorney s Office

Southern District of New York

One St. Andrew s Plaza

New York, New York 10007

O: (212) 637-1944; (202) 353-2553

---------------------------------------------------------------------------------------------

F: (212) 637-2429

---

From: Jeremy Schneider [mailto:JSchneider@rssslaw.com]
Sent: Monday, July 6, 2015 2:34 PM
To: Lai, Sarah (CRM); Krieger, Paul (USANYS); David Stern; Lucas Anderson
Subject: Tsastsin


Hi Sarah
I just wanted to confirm a few things that have been discussed, but not specifically included in the plea agreement. It's my intention to put these items on the record at the time of the plea. (1) the defendant will not be prosecuted for false/fake anti-virus;
(2) no one in the defendant's family/relatives will be prosecuted or arrested for any of these or related crimes, and if a family member comes to the Unites States, he/she will not be arrested (obviously this representation by you is based on information you presently have);
(3) that the time Tsastsin was in custody in Estonia on this case/related case, before he was brought to the United States (approximately 36 months) should be credited towards any sentence he receives here (at best you concur and at worst you take no position). While I don't expect to put this on the record, I want to remind Paul that back in May, when we were discussing possible plea alternatives (for example, I suggested a statutory cap, which Paul declined to offer), I expressed my concern about the fact that even though Tsastsin was not getting leadership points in the plea agreement, what will the gov't say if Judge Kaplan asks. Paul assured me that Sarah will be able to articulate reasons why he was not getting those points. Finally, the Fast Track Program is something the defendant is very interested in. As you know, he received a 6 year sentence in Estonia, so even if he's returned there sooner rather than later, he will still be serving a prison sentence. Why have the U.S. taxpayers pay for his incarceration any longer than is necessary? I'm just sayin'... Thanks.

Jeremy Schneider, Esq.
Rothman, Schneider, Soloway & Stern, LLP
100 Lafayette Street, Suite 501
New York, New York 10013
212-571-5500 Ph
212-571-5507 Fax

# Appendix B

# MEMORANDUM



**The GEO Group, Inc.**

Date: June 10, 2016

To: V. Tsastsin  BOP# 91040-054, C4-31U

From: R. Forcey, Records Clerk

Re:  jail credit

Moshannon Valley
Correctional Center
555 GEO Drive
Philipsburg, PA 16866

www.geogroup.com

---

I have received a copy of the document from the Designation & Sentence Computation Center that we discussed at Open House. On page two of that document it states "Second, the time periods the defendants were deemed to be in United States custody began on the date they were detained pursuant to the United States extradition request. Prior to that date, they were detained on the Estonian charges." Your "deemed date" is 12-21-2013.

BOP policy statement 5880.28, page 1-14, states "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-- ..that has not been credited against another sentence.

The in question, November 8, 2011 and following, are part of an Estonian sentence. The 19 months 2 days mentioned in the document are marked as part of your jail credit that started 12-21-2013.

# Appendix C



DRAFT – NOT THE MOST RECENT AGREEMENT

DIFFERENT FORFEITURE

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew=s Plaza*
*New York, New York 10007*

June 29, 2015

BY ELECTRONIC MAIL

Jeremy Schneider, Esq.
Rothman, Schneider, Soloway & Stern, LLP
100 Lafayette Street, Suite 501
New York, New York 10013

**Re: United States v. Vladimir Tsastsin, S2 11 Cr. 878 (LAK)**

Dear Mr. Schneider:

On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Vladimir Tsastsin (the "defendant") to Counts One and Two of the above-referenced Indictment. Count One charges the defendant with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349, and carries a maximum term of imprisonment of 20 years, a maximum term of supervised release of three years, a maximum fine, pursuant to Title 18, United States Code, Section 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant as a result of the offense, and a $100 mandatory special assessment. In addition to the foregoing, the Court must order restitution as specified below.

Count Two charges the defendant with conspiracy to commit computer intrusion, in violation of Title 18, United States Code, Section 1030(b). Specifically, this Office will accept a guilty plea from the defendant to participating in a computer intrusion conspiracy with the object of violating Title 18, United States Code, Section 1030(a)(4). This charge carries a maximum term of 5 years' imprisonment; a maximum term of three years of supervised release; a maximum fine, pursuant to Title 18, United States Code, Section 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant as a result of the offense; and a $100 mandatory special assessment.

The total maximum term of imprisonment on Counts One and Two is 25 years.

 In consideration of the defendant's plea to the above offenses, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for (i) participating in a scheme to distribute malicious software that changed the domain name system ("DNS") settings on millions of victims' computers without authorization and to maintain a network of rogue DNS servers, in furtherance of click hijacking and advertisement replacement fraud, as charged in Counts One to Five of the Indictment; and (ii) laundering the proceeds from that scheme, as charged in Counts Six to Twenty-Seven of the Indictment. In addition, at the time of sentencing, the Government will move to  dismiss any open Count(s) against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

The defendant hereby admits the forfeiture allegations with respect to Counts One and Two of the Indictment and agrees to forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(B), and Title 28, United States Code, Section 2461, the following property representing property which constitutes or is derived from proceeds traceable to the offense charged in Count One, and/or property constituting, or derived from proceeds obtained directly and indirectly as a result of the offense in Count Two, and/or personal property that was used and intended to be used to commit and to facilitate the commission of the offense charged in Count Two:

1. A sum of money equal to $2.5 million in United States currency (the "Money Judgment"); and

 2. All right, title and interest of the defendant in the following specific property:

    a. Any and all United States currency, funds or other monetary instruments credited to the following accounts:

        i. Nordea Bank Danmark A/S Account Nos. DK3520005036250625 and DK3520005036246059, in the name of Furox Aps;

        ii. Bank of Cyprus Account No. CY2700200155000004061626106, for the benefit of Onwa Limited;

        iii. Bank of Cyprus Account No. CY3800200155000004046807606, for the benefit of Lintor Limited;

        iv. Bank of Cyprus Account Nos. CY6600200155000004081187006, CY7200200155000000113088200; and

2

CY20002001550000004081188901, for the benefit of Danona Limited;

v.  Marfin Popular Bank in Cyprus Account Nos. CY50003001680000016832019961 and CY08003001680000016811019441, for the benefit of Lex Capital Ltd;

vi.  Marfin Popular Bank in Cyprus Account No. CY92003001790000017932264691, for the benefit of Onwa Limited;

vii.  Interactive Brokers LLC in the United States Account Nos. U565997 and U595413, in the name of Lex Capital Limited;

viii.  Sampo Bank in Estonia Account No. EE063300333436290009, in the name of Onwa Limited;

ix.  Vorarlberger Landes in Austria, Account No. AT755800020497851018, for the benefit of Lintor Limited; and

x.  BMI Offshore Bank in the Republic of Seychelles Account No. 300000005588, in the name of Onwa Limited;

b.  The defendant's interests in all computers and computer peripherals that, as of November 6, 2011, were:

i.  associated with IP addresses 85.255.112.0 through 85.255.127.255; 67.210.0.0 through 67.210.15.255; 93.188.160.0 through 93.188.167.255; 77.67.83.0 through 77.67.83.255; 213.109.64.0 through 213.109.79.255; 64.28.176.0 through 64.28.191.255; 69.197.132.58; 72.233.76.82; 174.123.205.190; 174.133.7.122; 184.82.214.2; 216.127.191.66; 64.20.51.2; 65.60.9.234; 65.60.9.235; 65.60.9.236; 65.60.9.237; 65.60.9.238; 66.152.177.58; 72.18.192.58; 72.18.192.59; 72.18.192.60; 72.18.192.61; 72.233.76.66; 72.233.76.67; 72.233.76.68; 72.233.76.69; 72.233.76.70; 65.254.36.122; 65.254.50.10; 72.9.238.202; 75.127.76.194; 207.210.119.170; 216.180.243.10; 64.111.197.186; 66.230.167.218; and 69.93.95.234;

ii.  located at the Pilosoft, Inc., in New York, New York;

iii.  located at the Colosecure, Inc., in Chicago, Illinois;

3

iv.    located at ThePlanet in Houston, Texas;

v.    located at Multacom Corporation in Canyon County, California;

vi.    located at Layered Technologies in Plano, Texas;

vii.    located at Network Operations Center, Inc. in Scranton, Pennsylvania;

viii.    located at Wholesale Internet in Kansas City, Missouri;

ix.    located at SingleHop in Chicago, Illinois;

x.    located at PremiaNet in Las Vegas, Nevada;

xi.    located at Interserver in Secaucus, New Jersey;

xii.    located at ISPrime, LLC, in Weehawken, New Jersey;

xiii.    located at Global Net Access LLC, in Atlanta, Georgia; and

c.    the IP addresses listed in paragraph 2.b.i above

(collectively, the "Specific Property"). The defendant agrees that he will not file a claim or a petition for remission or mitigation in any forfeiture proceeding involving the Specific Property and will not cause or assist anyone else in doing so. The defendant also agrees to take all necessary steps to pass clear title to the Specific Property to the United States, including, but not limited to, the execution of all necessary documentation. It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture. The defendant consents to the entry of the Consent Order of Forfeiture annexed hereto as Exhibit A and agrees that the Consent Order of Forfeiture shall be final as to the defendant at the time it is ordered by the Court.



The defendant further agrees to make restitution in an amount ordered by the Court in accordance with Title 18, United States Code, Sections 3663 and 3663A.



In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

A.    Offense Level

1.    The Guidelines Manual in effect as of November 1, 2014, applies to this case.

4

2.      Counts One and Two are grouped into a single Group because the offense level is determined largely on the basis of the total amount of harm or loss, pursuant to U.S.S.G. §§ 3D1.1(a)(1) and 3D1.2(d).

3.      The Guideline that applies to Count One produces the highest offense level in this case. Because (A) the defendant was convicted of an offense referenced in this Guideline; and (B) that offense of conviction has a statutory maximum term of imprisonment of 20 years or more, the Base Offense Level is 7, pursuant to U.S.S.G. § 2B1.1(a)(1).



4.      Because the loss amount was more than $1 million but not more than $2,500,000, the offense level is increased by 16 levels, pursuant to U.S.S.G. § 2B1.1(b)(1)(K).

5.      Because the offense involved more than 250 victims, the offense level is increased by 6 levels, pursuant to U.S.S.G. § 2B1.1(b)(2)(C).

6.      Because a substantial part of the fraudulent scheme was committed from outside the United States, including Estonia, and the offense otherwise involved sophisticated means, including the operation of a network of hundreds of computers located in multiple countries, the registration of domain names and Internet Protocol addresses under false identities, and the use of shell companies registered in multiple countries, the offense level is increased by 2 levels, pursuant to U.S.S.G. § 2B1.1(b)(10).

7.      Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, an additional one-level reduction is warranted, pursuant to U.S.S.G. § 3E1.1(b), because the defendant timely gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

 In accordance with the above, the applicable Guidelines offense level is 28.

B.      Criminal History Category

Based upon the information now available to this Office (including representations by the defense), the defendant has no criminal history points. Accordingly, he is in Criminal History Category I.

C.      Sentencing Range

Based upon the calculations set forth above, the defendant's stipulated Guidelines range is 78 to 97 months' imprisonment (the "Stipulated Guidelines Range"). In addition, after determining

Rev. 11.07.2014

the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 28, the applicable fine range is $12,500 to 125,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party suggest that the Probation Office consider such a departure or adjustment under the Guidelines, or suggest that the Court *sua sponte* consider any such departure or adjustment.

The parties agree not to seek a sentence outside of the Stipulated Guidelines Range, or suggest in any way that the Probation Office or the Court consider a sentence outside of the Stipulated Guidelines Range.

Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced; (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, see U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that his entry of guilty pleas to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the

6

defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Range of 78 to 97 months' imprisonment, and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal any forfeiture amount that is less than or equal to $2,500,000 or any fine amount that is less than or equal to $125,000, and the Government agrees not to appeal any fine amount that is greater than or equal to $12,500. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise.   Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering these pleas of guilty, the defendant waives any and all right to withdraw his pleas or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady* v. *Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, and impeachment material pursuant to *Giglio* v. *United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that because he is not a citizen of the United States, his guilty pleas and convictions make it very likely that his deportation from the United States is presumptively mandatory and that, at a minimum, he is at risk of being deported or suffering other adverse immigration consequences. The defendant acknowledges that he has discussed the possible immigration consequences (including deportation) of his guilty pleas and conviction with defense counsel. The defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty pleas and convictions, even if those consequences include deportation from the United States. It is agreed that the defendant will have no right to withdraw his guilty pleas based on any actual or perceived adverse immigration consequences (including deportation) resulting from the guilty pleas and convictions. It is further agreed that the

7

defendant will not challenge his convictions or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including deportation) resulting from his guilty pleas and convictions.

It is further agreed that should the convictions following the defendant's pleas of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

 

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or

8

conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

PREET BHARARA
United States Attorney

By:_____
SARAH Y. LAI
Assistant United States Attorney
(212) 637-1944

APPROVED:


_____
PAUL KRIEGER
Deputy Chief
Complex Frauds and Cybercrime Unit


AGREED AND CONSENTED TO:


_____        _____
VLADIMIR TSASTSIN                       DATE

APPROVED:


_____        _____
JEREMY SCHNEIDER, ESQ.                  DATE
Attorney for Vladimir Tsastsin

9

# Appendix D



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
## PROBATION OFFICE
### August 19, 2015

Michael J. Fitzpatrick
Chief
U S. Probation Officer

James T. Blackford
Sr. Deputy Chief
U S Probation Officer

Thomas E. Mixon
Deputy Chief
U S Probation Officer

Edwin Rodriguez Jr.
Deputy Chief
U S. Probation Officer

Jeremy Schneider
100 Lafayette Street, Suite 501
New York, NY 10013

RE: **TSASTSIN, VLADIMIR**
DOCKET # **0208 1: S2 11 CR 00878-001 (LAK)**
DATE MAILED **Augsut 19, 2015**

Dear Counsel:

Enclosed is a copy of the Presentence report regarding your client, who is to be sentenced in the U.S. District Court, Southern District of New York, before the Honorable Lewis A. Kaplan on October 14, 2015. Please review and discuss its contents with your client.

Pursuant to Rule 32 (f)(1) and (2) of the Rules of Criminal Procedure, kindly communicate any objections to the Probation Department within fourteen (14) days from receipt of this report. The Probation Department's completed report must be submitted to the Court no later than seven (7) days prior to sentencing.

Your objection may be noted on the enclosed form or in a separate correspondence.

Very truly yours,

Jineen M. Forbes
Supervising U.S. Probation Officer
212-805-0040 ext. 5152

By
Jonathan J. Bressor
U.S. Probation Officer
212-805-0040 ext. 0077

Enc.
Cc: AUSA Sarah Y. Lai

NY 456 REV 5/2001

NYC Office Location:

Woolworth Building
233 Broadway, 14th Floor
New York, NY 10279
212.805.0040
212.805.0047 - Fax

NYC Office Mailing Address:

Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

White Plains Office:

United States Courthouse
300 Quarropas Street
White Plains, NY 10601-1901
914.390.4040
914.390.4055 - Fax

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

### PRESENTENCE INVESTIGATION REPORT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Docket No.: 0208 1: S2 11CR00878- 001 (LAK)** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| | ) | |
| **Vladimir Tsastsin** | ) | **Sentence Date: 10/14/2015** |
| | ) | |

**Prepared for:**    Honorable Lewis A. Kaplan
Senior U.S. District Judge

**Prepared by:**    Jonathan J. Bressor
USPO
212-805-0077
Jonathan_Bressor@nysp.uscourts.gov

| **Assistant U.S. Attorney** | **Defense Counsel** |
|---|---|
| Sarah Y. Lai | Jeremy Schneider |
| One Saint Andrew's Plaza | 100 Lafayette Street, Suite 501 |
| New York, NY 10007 | New York, NY 10013 |
| (212) 637-1944 | 212-571-5500 |
| sarah.lai@usdoj.gov | jschneider@rssslaw.com |

**Offense:**    **Count 1**:
Conspiracy to Commit Wire Fraud
18 U.S.C. § 1349
Not more than 20 years' imprisonment/ maximum 3 years' supervised release/ maximum $250,000.00 fine/ $100 special assessment
(Class C Felony)

**Count 2**:
Conspiracy to Commit Computer Intrusion
18 U.S.C. § 1030(a)(4)
Not more than 5 years' imprisonment/ maximum 3 years' supervised release/ maximum $250,000.00 fine/ $100 special assessment
(Class D Felony)

**Release Status:**    Arrested in Estonia on November 8, 2011, and detained. Extradited to the U.S. on October 30, 2014, and remanded following his initial appearance in the SDNY on October 31, 2014.

---

**Date Report Prepared: 08/19/2015**            **Date Report Revised:**

# Appendix E



# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK
# PROBATION OFFICE

## MEMORANDUM

**TO:**     Honorable Lewis A. Kaplan
            Senior U.S. District Judge

**FROM:**   Jonathan J. Bressor
            U.S. Probation Officer

**RE:**     TSASTSIN, VLADIMIR
            DKT. # 0208 1: S2 11 0078-001 (LAK)

**DATE:**   September 30, 2015

Attached is the Presentence Investigation report, including the recommendation and addendum, prepared on AUGUST 19, 2015, on the above-named individual, who is scheduled for sentencing on OCTOBER 14, 2015. Based on objections to the PSI and/or information received after the draft report was disclosed, the attached PSI has been revised as indicated in the addendum.

                            Respectfully submitted,

                            Michael J. Fitzpatrick
                            Chief U.S. Probation Officer

**By:**           _____

                            Jonathan J. Bressor
                            U.S. Probation Officer
                            212-805-0077

cc:   Jeremy Schneider,
       Sarah Y. Lai , AUSA

## ADDENDUM TO THE PRESENTENCE REPORT

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK
### UNITED STATES V. VLADIMIR TSASTSIN, DKT. 0208 1: S2 11CR00878-001 (LAK)

### OBJECTIONS

#### By the Government

To date, no objections have been received from the Government.

#### By the Defendant

To date, no objections have been received from the defense.

### REVISIONS

¶ 118 has been revised to note factors that may warrant a sentence outside of the Stipulated Guidelines Range.

Respectfully Submitted,

Chief U.S. Probation Officer

By:     Jonathan J. Bressor
USPO

Approved:

Jineen Forbes
SUSPO

FROM: Vladimir Tsastsin
#91040-054 C4
MVCC
555 Geo Drive
Philipsburg, PA 16866

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE
**CERTIFIED MAIL**™

7014 1200 0000 3798 2000



Hasler
06/21/2018
US POSTAGE $012.25⁰

ZIP 16866
011D11653771

SDNY

To: United States District Court for
the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
40 Foley Square
New York, NY 10007

RECEIVED
2018 JUN 25 PM 11:01
U.S. COURT OF APPEALS
SECOND CIRCUIT



UNITED STATES
POSTAL SERVICE
For Domestic Use Only

★ PRIORITY ★
MAIL

★ TRACKED ★
INSURED

Label 107R, July 2013

RECEIVED
S.D.N.Y. PRO SE OFFICE
2018 JUN 28 PM 11:09
S.D. OF N.Y.